# STATE OF CONNECTICUT *v.* ANTWON W.[1]
## (AC 28150)

Flynn, C. J., and Harper and Hennessy, Js.

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Argued September 10—officially released December 1, 2009

*Neal Cone*, senior assistant public defender, for the appellant (defendant).

*Michele C. Lukban*, senior assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Patrick J. Griffin*, senior assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, C. J. The defendant, Antwon W., appeals from the judgment of conviction, rendered following a jury trial, of one count of sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1) (A), three counts of sexual assault in the first degree

in violation of General Statutes § 53a-70 (a) (1), three counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2) and one count of risk of injury to a child in violation of General Statutes (Rev. to 2001) § 53-21 (a) (2), as amended by Public Acts 2002, No. 02-138, § 4. On appeal, the defendant claims that (1) his conviction of sexual assault in the first degree and risk of injury to a child constituted double jeopardy, (2) the trial court improperly allowed to be admitted constancy of accusation testimony, (3) the court improperly charged the jury with regard to constancy of accusation testimony, (4) the court improperly allowed to be admitted expert testimony and (5) the court improperly charged the jury with respect to the testimony of the state's expert witness in child sexual abuse. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In December, 2002, the victim, who was twelve years old, and her mother moved into a house occupied by the victim's uncle, aunt and cousins. At this time, the defendant, an eighteen year old son of the victim's uncle and aunt, did not reside at the house, but he visited frequently and spent time in the basement, where he played video games. About two weeks after the victim and her mother moved in, the victim was doing laundry in the basement when the defendant came downstairs (first incident). The defendant said to the victim: "Do you do things like this?" Subsequently, he pulled down his sweatpants, revealing his penis. The defendant, who stood between the victim and the stairway, then told the victim that he would not let her leave until she touched his penis. Scared and wanting to leave the area, the victim touched the defendant's penis briefly and then ran upstairs. The victim did not report the incident to anyone else immediately because she was scared and in shock.

Approximately one week later, the victim went downstairs to the basement and again encountered the defendant (second incident). The defendant grabbed the victim's collar and ordered her to bend over, indicating that he would not allow her to leave until she complied. The victim bent over, and the defendant pulled her pants down and penetrated her vagina with his penis, causing the victim to feel "shocking pain" and pressure. Although the victim did not scream or fight the defendant because she was scared, she did try "tightening" herself up to prevent the defendant's penetration. When the defendant had finished, the victim felt wetness and coldness on her vagina. The victim left the basement and proceeded upstairs to her bedroom. She did not reveal the incident to anyone right away because she was scared about what people might think of her and worried that the assault somehow was her fault.

By the summer of 2003, the victim and her mother had moved out of the house belonging to the victim's uncle and aunt. However, the victim and her mother periodically returned to visit. On one of these visits in the summer of 2003, the victim was playing with her cousins in the swimming pool in the backyard. The victim became ill with a headache, and one of her cousins told her to go lie down in another cousin's room, which was located in the basement (third incident). The defendant entered the room and asked the victim: "Which one?" The victim asked what the defendant meant, and the defendant repeated the statement, pointing to the victim's vagina, anus and mouth. The victim understood the defendant to be asking either for her to "touch him" or to have the defendant "put his penis inside" her. Attempting to avoid the pain of penetration, the victim chose to touch the defendant, and the defendant lowered his pants. After the victim had touched the defendant's penis, the defendant turned the victim over onto her stomach and penetrated her vagina. The

victim tensed up in an attempt to prevent the penetration, but she felt the same pain and pressure as she had experienced during the previous incident. When the defendant had finished, the victim felt the same wet feeling in her vaginal area. Following the assault, the defendant left the room, and the victim went to sleep. The victim again did not report the assault immediately, as she felt scared and thought no one would believe that the defendant, her cousin, would do such a thing.

On another occasion during the summer of 2003, the victim was in an upstairs bedroom playing a game with one of her cousins (fourth incident). When the cousin left to go downstairs, the defendant entered the room and said to the victim, "I'll pay you $13 if you suck my dick," and he showed the victim the money. The victim refused and said she would scream. The defendant replied that he would break her jaw. This threat scared the victim, and she placed her mouth on the defendant's penis. The defendant stood before the victim, who was seated on the bed, and placed his hands on her head, applying pressure and pushing her head up and down. The incident ended when the defendant heard someone coming up the stairs, and he put his penis back in his pants and sat down as if nothing had happened. Following the incident, the victim was scared and did not report it to anyone immediately.

In January, 2004, the victim revealed the defendant's abuse to her cousin, T, her aunt, B, and her mother, S. S took the victim to the police department where she spoke with police officers and provided a statement. Thereafter, by way of a substitute long form information, the state charged the defendant with one count of sexual assault in the third degree in violation of § 53a-72a (a) (1) (A),[2] three counts of sexual assault in the

---

[2] General Statutes § 53a-72a (a) provides in relevant part: "A person is guilty of sexual assault in the third degree when such person (1) compels another person to submit to sexual contact (A) by the use of force against such other person or a third person . . . ."

first degree in violation of § 53a-70 (a) (1),[3] three counts of sexual assault in the first degree in violation of § 53a-70 (a) (2)[4] and one count of risk of injury to a child in violation of § 53-21 (a) (2).[5] Following trial, the jury found the defendant guilty of all counts. The court subsequently rendered a judgment of conviction and sentenced the defendant to an effective term of fifteen years incarceration and fifteen years of special parole. This appeal followed. Additional facts will be supplied where necessary.

## I

## DOUBLE JEOPARDY CLAIM

The defendant first claims that his conviction of three counts of sexual assault in the first degree in violation of § 53a-70 (a) (2) and one count of risk of injury to a child in violation of § 53-21 (a) (2) constituted a violation of his constitutional right not to be placed in double jeopardy. Specifically, he argues that both statutes require that the defendant be more than two years older than the victim and that both statutes require proof

[3] General Statutes § 53a-70 provides in relevant part: "(a) A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person . . . ."

[4] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person . . . (2) engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person . . . ."

[5] General Statutes (Rev. to 2001) § 53-21 (a), as amended by Public Acts 2002, No. 02-138, § 4, provides in relevant part: "Any person who . . . (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of . . . a class B felony for a violation of subdivision (2) of this subsection."

that the defendant committed an act "in a sexual and indecent manner likely to impair the morals" of the victim.

The defendant did not raise this claim before the trial court. He seeks review, therefore, pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[6] Although the record is adequate for our review and the claim is of constitutional magnitude, the defendant cannot demonstrate that a constitutional violation clearly exists, and so his claim must fail. See id.

As a preliminary matter, we set forth the standard of review and principles of law underlying the defendant's claim. A defendant's claim that a conviction violated his constitutional right against double jeopardy raises an issue of law; our review of such a claim is plenary. *State* v. *Burnell*, 290 Conn. 634, 642, 966 A.2d 168 (2009). The United States constitution contains the guarantee that "[n]o person shall be . . . subject for the same offense to be twice put in jeopardy of life or limb . . . ." U.S. Const., amend. V. The fifth amendment's prohibition of double jeopardy applies to state prosecutions through the due process clause of the fourteenth amendment. *Benton* v. *Maryland*, 395 U.S. 784, 794, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969). The double jeopardy clause protects against a second prosecution for the same offense following acquittal, a second prosecution for the same offense after conviction and multiple punishments for the same offense. *State* v. *Bletsch*, 281 Conn. 5, 27, 912 A.2d 992 (2007). It is the final protection that is implicated in the present case.

---

[6] Pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40, a defendant may prevail on an unpreserved claim of error only if: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt."

In determining whether two offenses are the same offense for double jeopardy purposes, we apply a two part test. First, we must determine whether the offenses arose out of the same act or transaction. See *State* v. *Alvaro F.*, 291 Conn. 1, 6, 966 A.2d 712, cert. denied, 558 U.S. 882, 130 S. Ct. 200, 175 L. Ed. 2d 140 (2009). Second, we must determine whether the charged crimes constitute the same offense. See id. Multiple punishments are a constitutional violation only where both conditions are met. Id.

To determine whether the offenses in question arose out of the same acts or transactions, we examine the language of the information. See *State* v. *Edwards*, 100 Conn. App. 565, 593, 918 A.2d 1008, cert. denied, 282 Conn. 928, 929, 926 A.2d 666, 667 (2007). The substitute long form information charged the defendant in counts three, five and seven with sexual assault in the first degree in violation of § 53a-70 (a) (2). In count three, the information alleged that "between the dates of approximately December 2002 and February 2003, at or near the basement" of the house of the victim's uncle and aunt, the defendant engaged in vaginal intercourse with the victim, who was under the age of thirteen, and the defendant was more than two years older than the victim at the time. Count three thus pertained to the second incident. Count five contained the same allegation as count three but specified that the act charged occurred "on or about the summer of 2003, at or near the basement" of the house of the victim's uncle and aunt. The act described by count five, therefore, was the third incident. The information alleged in count seven that the defendant, "on or about the summer of 2003," engaged in sexual intercourse, namely, fellatio, at the house of the victim's uncle and aunt. Count seven also charged that the victim at the time was under thirteen and that the defendant was more than two

years older than the victim. That count described the fourth incident between the victim and the defendant.

Count eight of the information alleged a violation of § 53-21 (a) (2), specifying that "on or about dates between approximately December 2002 and the summer of 2003, at or near [the house of the victim's uncle and aunt], the [defendant] did an act likely to impair the morals of a child, [the victim]: he had contact with the intimate parts of a child under the age of sixteen years of age and subjected a child under sixteen years of age to contact with his intimate parts, in a sexual and indecent manner likely to impair the morals of such child." Count eight thus pertained to the second, third and fourth incidents. The acts underlying the charges of sexual assault in the first degree in counts three, five and seven are the same acts underlying the charge of risk of injury to a child contained in count eight. The offenses in counts three, five, seven and eight, therefore, arose out of the same acts or transactions.

We move thus to the second step in our double jeopardy analysis in which we must determine whether the charged crimes constitute the same offense. To make this determination, we apply the test enunciated by the United States Supreme Court in *Blockburger* v. *United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932). Under *Blockburger*, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Id., 304. This technical test requires the court to examine only the statutes, charging instruments and bill of particulars rather than any of the evidence presented at trial. *State* v. *Bletsch*, supra, 281 Conn. 27–28.

To convict the defendant of sexual assault in the first degree under § 53a-70 (a) (2), the state must prove that

(1) the defendant engaged in sexual intercourse with the victim, (2) the victim was under thirteen years old, and (3) the defendant was more than two years older than the victim. To convict the defendant of risk of injury to a child under § 53-21 (a) (2), the state must prove that (1) the defendant had contact with the intimate parts of, or subjected to contact with his intimate parts, (2) a child under the age of sixteen, (3) in a sexual and indecent manner likely to impair the health or morals of the child. Our review of these statutes leads us to conclude that each statute requires proof of a fact that the other does not.

Section 53a-70 (a) (2) requires proof that the defendant engaged in sexual intercourse with the victim. Section 53-21 (a) (2) does not require such proof. See *State* v. *Rivera*, 84 Conn. App. 245, 249–50, 853 A.2d 554 (sexual assault in second degree in violation of General Statutes § 53a-71 [a] [1] requires proof of sexual intercourse while risk of injury to child under § 53-21 does not), cert. denied, 271 Conn. 934, 861 A.2d 511 (2004). Although the crime of risk of injury to a child requires that the defendant have contact with the victim's intimate parts, or subject the victim to contact with his intimate parts, it does not require the defendant to have sexual intercourse with the victim.

The statutory crimes also contain different elements with regard to the age of the victim. Section 53a-70 (a) (2) requires proof that the victim was under age thirteen; § 53-21 (a) (2) requires proof that the victim was under age sixteen. See *State* v. *Morris*, 49 Conn. App. 409, 419–20, 716 A.2d 897 (concluding victim age requirements of § 53-21 and General Statutes § 53a-73a [a] [1] [A] [under fifteen years of age] require proof of different facts for purposes of *Blockburger*), cert. denied, 247 Conn. 904, 720 A.2d 516 (1998).

Furthermore, a conviction of risk of injury to a child under § 53-21 (a) (2) requires proof that the contact be

"in a sexual and indecent manner likely to impair the health or morals" of the victim. The state need not prove such an element to obtain a conviction of sexual assault in the first degree under § 53a-70 (a) (2). See *State* v. *Ellison*, 79 Conn. App. 591, 601–602, 830 A.2d 812 (comparing § 53-21 with § 53a-71), cert. denied, 267 Conn. 901, 838 A.2d 211 (2003).

The defendant's arguments that sexual assault in the first degree and risk of injury to a child constitute the same offense are unavailing. Contrary to the defendant's assertion, § 53-21 (a) (2) does not contain a requirement that the defendant be two years older than the victim. In *State* v. *Jason B.*, 248 Conn. 543, 565, 729 A.2d 760, cert. denied, 528 U.S. 967, 120 S. Ct. 406, 145 L. Ed. 2d 316 (1999), our Supreme Court addressed this issue, concluding that "[t]he express language of § 53-21 . . . does not require any consideration of the age of the defendant for the purposes of determining criminal liability." The court further noted it could discern no legislative intention to include such an age requirement for the defendant. Id.[7] The defendant's argument that § 53a-70 (a) (2) contains a requirement that the act in question be committed in a manner likely to impair the health or morals of the victim also is without merit. A plain reading of the statutory language reveals no such provision in the statute. Furthermore, our Supreme Court has stated that the requirement of § 53-21 of a "likelihood of impairment of the morals or health of a child, is not a necessary corollary of sexual inter-course." *State* v. *McCall*, 187 Conn. 73, 91, 444 A.2d 896 (1982). This court has also determined that sexual assault in the second degree in violation of § 53a-71 (a)

---

[7] The defendant in *Jason B.* had argued that in amending General Statutes (Rev. to 1993) § 53a-71 (a) (1) to include "an exemption from criminal liability for those persons engaging in consensual sexual intercourse with persons not more than two years their junior," the legislature also implicitly modified § 53-21 to include a similar age requirement for the defendant charged under the latter statute. *State* v. *Jason B.*, supra, 248 Conn. 564.

(1)[8] does not require proof that the contact was made in a sexual and indecent manner likely to impair the health or morals of the child. *State* v. *Rivera*, supra, 84 Conn. App. 249. Although the statute in question is different here, the analysis of *Rivera* applies to sexual assault in the first degree under § 53a-70 (a) (2). On the basis of the foregoing analysis, we conclude that sexual assault in the first degree under § 53a-70 (a) (2) and risk of injury to a child under § 53-21 (a) (2) do not constitute the same offense, as each crime requires proof of a fact not required by the other. See *Blockburger* v. *United States*, supra, 284 U.S. 304.

Finally, our double jeopardy analysis concludes not with a comparison of the offenses but, instead, with consideration of legislative intent. Because the *Blockburger* test is a rule of statutory construction, it cannot control in the face of a clear indication of contrary legislative intent. *State* v. *Alvaro F.*, supra, 291 Conn. 12. However, "[w]hen the conclusion reached under *Blockburger* is that the two crimes do not constitute the same offense, the burden remains on the defendant to demonstrate a clear legislative intent to the contrary." Id., 12–13. The defendant has not met this burden, as his brief contains no analysis to demonstrate that the legislature did not intend the crimes described by §§ 53a-70 (a) (2) and 53-21 (a) (2) to be separate offenses.

We conclude that the defendant's claim fails under the third prong of *Golding* because the constitutional violation he alleges does not clearly exist. See *State* v. *Golding*, supra, 213 Conn. 240.

---

[8] A conviction of sexual assault in the second degree under § 53a-71 (a) (1) requires proof that (1) the defendant engaged in sexual intercourse (2) with another person who was thirteen years of age or older but under sixteen years of age and (3) the defendant was more than two years older than such person.

## II

## EVIDENTIARY CLAIMS

The defendant next claims that the court improperly allowed to be admitted constancy of accusation and expert witness testimony. He argues that the admission of such testimony violated his right to a fair trial under the due process provisions of the fourteenth amendment to the United States constitution and article first, § 8, of the constitution of Connecticut. We disagree.

### A

The following additional facts and procedural history are required for our review of the defendant's claim pertaining to constancy of accusation testimony. In January, 2004, the victim was speaking with her cousin, T, on the telephone. The victim told T, without providing further details, that the defendant had sexually assaulted her and told T that the information must remain a secret. T initiated a three way telephone conversation with the victim's aunt, B, and told the victim to tell her aunt what had happened. The victim complied, telling B what she had told T. The following day, the victim told her mother, S, about the assaults, explaining that the defendant had raped her. S took the victim to the police department, where the victim spoke with police officers and gave a statement.

Prior to trial, the defendant filed a motion in limine seeking to preclude any evidence of constancy of accusation, and defense counsel argued the motion prior to the state's offer of constancy of accusation witnesses. Defense counsel maintained that, in light of our Supreme Court's decisions in *State* v. *Troupe*, 237 Conn. 284, 677 A.2d 917 (1996), and *State* v. *Samuels*, 273 Conn. 541, 871 A.2d 1005 (2005), the theory behind the constancy of accusation doctrine was one that "no longer really bears any weight as far as the real world

is concerned." Defense counsel argued that allowing constancy of accusation testimony under the circumstances of the case would deny the defendant his right to a fair trial by placing an unfair burden on him because the lack of physical evidence rendered the trial a classic case of " 'he said, she said' . . . ." He asked the court, therefore, to prohibit all such testimony whatsoever.

The court denied the defendant's motion, holding that the evidence was proper pursuant to *State* v. *Troupe*, supra, 237 Conn. 284, and § 6-11 (c) of the Connecticut Code of Evidence. The court asked the prosecutor to identify beforehand any witness who was to provide constancy of accusation testimony and detailed the limiting instruction that it would give to the jury prior to any such testimony.

T, the victim's cousin, testified that she had a telephone conversation with the victim in either January, 2004, or 2005 during which the victim revealed that the defendant had raped her in the house belonging to the victim's uncle. T stated that the victim seemed reluctant and scared to tell T what had happened to her. T testified further that after the victim told her of the abuse, T called B, their aunt, thereby initiating a three way telephone conversation. B testified that she had spoken by telephone with the victim and T in a three way conversation in which the victim related that she had something to tell B, but that she was hesitant to do so. B testified that the victim eventually said that "something had happened between her and [the defendant]" and that she had been holding the information inside for a couple of months. B testified further that the victim told her that the defendant had "taken her down [to] the basement and made her do some things to him" that were sexual in nature and that this had occurred approximately four times. The victim's mother, S, testified that in January, 2004, the victim had told her that the defendant sexually assaulted her on three or four

occasions in the house of the victim's uncle and aunt. Prior to each of these witnesses, the court instructed the jury as to the manner in which it could use the constancy of accusation testimony. Following S's testimony, the court again reviewed its limiting instruction with the jury.

The defendant claims that the court improperly allowed to be admitted the testimony of the constancy of accusation witnesses. Adopting and reasserting the argument of trial defense counsel, the defendant maintains that admission of this testimony violated his right to a fair trial under both the federal and state constitutions. The introduction of constancy of accusation testimony for the purposes of corroborating the fact of a victim's complaint does not violate the constitutional fair trial rights of defendants in sexual assault cases. *State* v. *Troupe*, supra, 237 Conn. 305. The defendant's claim, therefore, is evidentiary in nature.

The defendant preserved this claim for appeal by way of his motion in limine, argued outside the presence of the jury prior to the testimony of the first constancy of accusation witness, in which he distinctly raised the issue. See Practice Book § 60-5. Our standard of review of an evidentiary claim depends on the function that the trial court is performing in issuing the challenged ruling. *State* v. *Saucier*, 283 Conn. 207, 219, 926 A.2d 633 (2007). When the admission of evidence is based on the court's interpretation of a rule of evidence, the question raised is a legal one and our review is plenary. Id., 218. "For example, whether a challenged statement properly may be classified as hearsay and whether a hearsay exception properly is identified are legal questions demanding plenary review." Id. A court's decision to admit evidence premised on an accurate view of the law, however, we review for an abuse of discretion. Id., 218–19. The defendant here does not challenge the court's characterization of the testimony of T, B and

S as constancy of accusation testimony. Rather, the defendant in effect argues that under the facts and circumstances of the present case, the court improperly allowed constancy of accusation testimony to be admitted. The claim, therefore, implicates the discretion of the court, and we review the defendant's claim to determine whether the court abused that discretion.

The constancy of accusation doctrine traces its roots to the common-law concept of "hue and cry" whereby victims of violent crime were "expected to cry out immediately and alert their neighbors that they had been violently assaulted." (Internal quotation marks omitted.) *State* v. *Troupe*, supra, 237 Conn. 294. In the context of sexual assault, evidence of a victim's "hue and cry" was "a necessary prerequisite for a court to hear a rape case" such that a woman who had not so complained could not have her case prosecuted. Id. Until 1974 in Connecticut, the state was required to offer evidence corroborating a victim's claims to obtain a conviction for sexual assault. See, e.g., General Statutes (Rev. to 1969) § 53a-68, which concerned certain sexual offenses and provided in relevant part: "A person shall not be convicted of any offense under this part, or of an attempt to commit such offense, solely on the uncorroborated testimony of the alleged victim, except as hereinafter provided. Corroboration may be circumstantial. . . ." The General Assembly repealed this requirement of corroboration in Public Acts 1974, No. 74-131. Despite the repeal of the corroboration requirement, in cases such as the present one, the state often seeks to offer evidence corroborating the victim's complaint of sexual abuse.

In *State* v. *Troupe*, supra, 237 Conn. 293–306, our Supreme Court reviewed the state of the constancy of accusation doctrine from the common law to the present, reaffirming its basic elements. The court acknowledged that the necessity of the doctrine is to counter

the "unwarranted, but nonetheless persistent, view that a sexual assault victim who does not report the crime cannot be trusted to testify truthfully about the incident." Id., 303. The court detailed the rule, concluding that "a person to whom a sexual assault victim has reported the assault may testify only with respect to the fact and timing of the victim's complaint; any testimony by the witness regarding the details surrounding the assault must be strictly limited to those necessary to associate the victim's complaint with the pending charge, including, for example, the time and place of the attack or the identity of the alleged perpetrator. . . . Thus, such evidence is admissible only to corroborate the victim's testimony and not for substantive purposes. Before the evidence may be admitted, therefore, the victim must first have testified concerning the facts of the sexual assault and the identity of the person or persons to whom the incident was reported." Id., 304–305; see also Conn. Code Evid. § 6-11 (c).[9]

Turning now to the facts of the present case, we do not conclude that the court abused its discretion in allowing the constancy of accusation testimony to be admitted. The testimony of T, B and S was preceded by the victim's testimony covering the facts of the assaults and the persons to whom she had reported them. The constancy witnesses' testimony regarding the victim's out-of-court statements properly was limited to the fact that the victim had complained, the timing of

___

[9] Section 6-11 (c) of the Connecticut Code of Evidence provides: "Constancy of accusation by a sexual assault victim. A person to whom a sexual assault victim has reported the alleged assault may testify that the allegation was made and when it was made, provided the victim has testified to the facts of the alleged assault and to the identity of the person or persons to whom the assault was reported. Any testimony by the witness about details of the assault shall be limited to those details necessary to associate the victim's allegations with the pending charge. The testimony of the witness is admissible only to corroborate the victim's testimony and not for substantive purposes."

each complaint and necessary details connecting the complaints to the assaults. Importantly, the testimony contained no extraneous details of the assaults, and it pertained only to the approximate time and place the assaults had occurred and the defendant's identity as the perpetrator. Such testimony is squarely within the parameters set forth in *Troupe*.

The defendant's arguments at trial and in his appellate brief contain considerable discussion attacking the constancy of accusation doctrine. At oral argument before this court, however, the defendant clarified that his claim was directed at the doctrine only as applied. Our Supreme Court has upheld the constancy of accusation doctrine as stated in *Troupe* in a number of recent cases. See, e.g., *State* v. *Burney*, 288 Conn. 548, 954 A.2d 793 (2008); *State* v. *Arroyo*, 284 Conn. 597, 935 A.2d 975 (2007); *State* v. *McKenzie-Adams*, 281 Conn. 486, 915 A.2d 822, cert. denied, 552 U.S. 888, 128 S. Ct. 248, 169 L. Ed. 2d 148 (2007). Our review of the present case leads us to conclude that the challenged testimony did not exceed the limits of the doctrine as it presently exists. Therefore, the court did not abuse its discretion in allowing it to be admitted.

B

The defendant also challenges the court's decision to allow expert testimony. The state called to testify Diane Edell, a licensed clinical social worker experienced in forensic interviewing of victims of sexual abuse. Edell testified as to factors common in cases of sexual abuse, including delayed disclosure of the abuse by the victim.

The defendant offered no objection at trial to Edell's testimony, which renders this claim unpreserved. He seeks review pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40, or to prevail pursuant to the plain error doctrine. See Practice Book § 60-5. Our Supreme Court

has stated that "[a] claim that the trial court improperly admitted the testimony of an expert is an evidentiary impropriety [and] not constitutional in nature . . . ." (Internal quotation marks omitted.) *State* v. *Iban C.*, 275 Conn. 624, 640, 881 A.2d 1005 (2005). The defendant's claim fails to satisfy *Golding*'s second prong, therefore, as it is not of constitutional magnitude.

Furthermore, we do not consider the court to have committed plain error in allowing the testimony to be admitted. The plain error doctrine, which provides a rule of reversibility, rather than reviewability, "is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Cutler*, 293 Conn. 303, 326, 977 A.2d 209 (2009). Our review of the record does not convince us that admission of Edell's testimony either compromised the fairness or integrity of the defendant's trial or that it would diminish public confidence in our judicial proceedings.

## III

## INSTRUCTIONAL CLAIMS

The defendant also raises claims regarding the court's jury instructions. He argues specifically that the court improperly instructed the jury concerning constancy of accusation and expert witness testimony. We address the defendant's claims in turn.

## A

Prior to the testimony of each constancy of accusation witness, the court provided the jury a limiting instruction describing the purpose for which the jury

could consider the testimony.[10] Following the close of evidence, the court charged the jury as follows: "Constancy of accusation. The complainant testified here in court before you. Her testimony in court you may use as evidence and proof of the facts asserted in that testimony and give it the weight you find is reasonable. The state offered evidence of out-of-court statements made by the complainant to other persons that the defendant sexually assaulted her. This court's recollection of those persons to whom the alleged victim made such statements are [T], [B] and [S]. Each of these people testified as to the statements the complainant made to each of them regarding the defendant's alleged sexual assaulting of her. This evidence by each of these witnesses is admitted solely to corroborate or not corroborate the complainant's testimony in court. It is to be considered by you only in determining the weight and credibility you will give to the complainant's testimony given here in court.

"This evidence of out-of-court statements by the complainant of a sexual assault against her by the defendant is not to be considered by you to prove the truth of the

[10] For example, before the prosecutor began his examination of T, the court instructed the jury: "Ladies and gentlemen, before this testimony begins, I want to explain a couple of things to you. There are times when evidence is admitted for a limited purpose. You can use it for one purpose, but you can't use it for another purpose. The testimony here is going to be one of those situations. So, I want to tell you at this point the purpose for which you can use the testimony that [T] is about to give. The evidence by this witness is admitted solely to corroborate or not corroborate the complainant's testimony in court. It is to be considered by you only in determining the weight and credibility you will give to the complainant's testimony given here in court. This evidence of out-of-court statement by the complainant of an alleged sexual assault against her, that is, the complainant, by the defendant, is not to be considered by you to prove the truth of the matter asserted, that is, the proof of what is said in those out-of-court statements, but it is to be presented for you to consider in assessing the credibility for you to give to the complainant's in-court testimony." The court gave substantially the same instruction prior to the testimony of B and S and also repeated a similar instruction following S's testimony.

matter asserted, the truth of what is said, in those out-of-court statements, but it is presented for you to consider in assessing the credibility you will give to the complainant's in-court testimony.

"In determining whether these out-of-court statements are corroborative or not corroborative of the complainant's testimony in court, you should consider all the circumstances under which these out-of-court statements were made and to whom and whether the statements made to those persons were or were not consistent with the complainant's testimony in court.

"To the extent you find what she said outside the courtroom is consistent with her testimony in court, you may find the complainant's testimony in court to be corroborated or supported. To the extent you find what the complainant has said outside the courtroom is inconsistent with her testimony in court, you may consider the degree of inconsistency which you may find, and you may consider the reasons you may find for the inconsistency in evaluating her testimony given here in court."

The defendant argues on appeal that the foregoing instruction encouraged the jury to use the constancy of accusation testimony improperly, thereby compromising his right to a fair trial. He specifically objects to the language stating that the constancy of accusation witnesses' testimony "is admitted solely to corroborate or not corroborate the complainant's testimony in court. It is to be considered by you only in determining the weight and credibility you will give to the complainant's testimony given here in court." The defendant also takes issue with the instruction that "[t]o the extent you find what she said outside the courtroom is consistent with her testimony in court, you may find the complainant's testimony in court to be corroborated or supported." He maintains that these portions of the

charge led the jury to consider the testimony as bolstering the victim's substantive testimony regarding the assaults, rather than in the proper, limited manner of corroborating only the fact and timing of the victim's complaint. The state, in opposition, argues first that the defendant's claim, being unpreserved, is unreviewable. It further contends that the language of the instruction properly stated the law with regard to the constancy of accusation doctrine as set forth in *Troupe*.

Although the defendant raises a substantial question with this claim, review of the issue must wait for another day. The defendant failed to preserve this claim at trial, as he neither submitted a request to charge the jury on the issue, nor objected to the court's instructions. See Practice Book § 16-20 ("[a]n appellate court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered"). Review pursuant to *Golding* is inappropriate. Not every claim of instructional error is constitutional in nature. *State* v. *LaBrec*, 270 Conn. 548, 557, 854 A.2d 1 (2004). Our Supreme Court repeatedly has noted that it has recognized instructional claims as raising constitutional issues only in matters relating to the elements of an offense, burden of proof and the presumption of innocence. Id.; see also *State* v. *Schiappa*, 248 Conn. 132, 165, 728 A.2d 466, cert. denied, 528 U.S. 862, 120 S. Ct. 152, 145 L. Ed. 2d 129 (1999); *State* v. *Dash*, 242 Conn. 143, 151–52, 698 A.2d 297 (1997); *State* v. *Walton*, 227 Conn. 32, 64–65, 630 A.2d 990 (1993). The defendant's claim does not pertain to the elements of the offenses in question, the state's burden of proof or the presumption of innocence, nor does the defendant make such an argument. Accordingly, it does not merit *Golding* review. See *State* v. *Golding*, supra, 213 Conn. 239–40.

The defendant also cannot prevail on his claim pursuant to the plain error doctrine. Although the issue raised is important, upon our review of the entire record, we cannot conclude that the present case presents one of the truly extraordinary situations in which the existence of the claimed error is so obvious that it affects the fairness and integrity of, and public confidence in, the judicial proceedings. See *State* v. *Cutler*, supra, 293 Conn. 326.

### B

The defendant also challenges the court's instruction regarding expert witness testimony. He argues that the charge improperly failed to include an instruction that Edell's testimony was not intended to address the ultimate question of whether the victim's allegations were true. Having failed to submit a request to charge the jury or to object to the court's instruction, the defendant did not preserve this claim for review. We will not review the claim under *Golding*, as it is not of constitutional magnitude. See *State* v. *LaBrec*, supra, 270 Conn. 557. We further find nothing in the record to convince us that the issue merits reversal for plain error.

The judgment is affirmed.

In this opinion the other judges concurred.