STATE OF CONNECTICUT *v.* ROBERTO RIVERA
(AC 34009)

DiPentima, C. J., and Beach and Alvord, Js.

Argued May 15—officially released September 3, 2013

*Neal Cone,* senior assistant public defender, for the appellant (defendant).

*Jennifer F. Miller,* special deputy assistant state's attorney, with whom, on the brief, were *John C. Smriga,* state's attorney, and *Pamela J. Esposito,* senior assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, C. J. The defendant, Roberto Rivera, appeals from the judgment of conviction, rendered after a jury trial, of three counts of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1) and three counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2). On appeal, the defendant claims that the court's instruction on evidence admitted pursuant to the constancy of accusation exception to the hearsay rule violated his due process rights. The defendant's argument is foreclosed by *State* v. *Antwon W.,* 118 Conn. App. 180, 201, 982 A.2d 1112 (2009), cert. denied, 295 Conn. 922, 991 A.2d 568 (2010), wherein we rejected the argument that the introduction of constancy of accusation testimony for the purpose of corroborating the fact of a victim's complaint violates the constitutional rights of defendants in sexual assault cases. "[T]his court's policy dictates that one panel should not, on its own, [overrule] the

ruling of a previous panel. The [overruling] may be accomplished only if the appeal is heard en banc." (Internal quotation marks omitted.) *Diaz* v. *Commissioner of Correction*, 125 Conn. App. 57, 68 n.9, 6 A.3d 213 (2010), cert. denied, 299 Conn. 926, 11 A.3d 150 (2011). We therefore decline the defendant's invitation to revisit this issue in the present case and affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The victim[1] was born in February, 1993. While living with his mother and his aunt in Bridgeport, the victim first met the defendant in 2004 or 2005, when the victim attended an after school basketball program. The victim briefly moved to Chicago, Illinois, with his mother sometime in late 2005, but returned to live with his father in Bridgeport in the summer of 2006. The victim next met the defendant that summer. While riding his bicycle in Bridgeport, the victim spoke to the defendant, who had pulled over in his car. The defendant asked the victim if he would like to go to Smiles Entertainment, an arcade. The victim said he would like to go with him at some point, but "blew [the defendant] off" at the time. The defendant gave the victim his phone number so that the victim could call him to "visit." When the victim next saw the defendant, the defendant asked why the victim had not called him and said that he did not like to be "messed around with." The victim and the defendant then began a friendship; the victim liked the defendant's flashy clothing, jewelry, and car. The victim felt as if the defendant gave him a "little brother vibe."

After they had spent time together, the defendant told the victim about a group called "HNIC" or "Head

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to use the victim's name or to identify members of the victim's family through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Niggas In Charge," (group) and asked the victim if he wanted to join it. The victim said he did. The victim understood that the group sold drugs. Later in the summer of 2006, after discussing the group with the victim, the defendant took the victim to his apartment and told the victim to make a decision about whether he wanted to join the group. At the same time, he asked the victim if he knew what the difference between a male and a female was, and the victim answered that he did know. The defendant told the victim he needed to complete a "mission" to join the group, which the victim understood to mean fighting or robbing another person. The defendant left the room, and when he returned he told the victim that he had to have sex with him to complete the "mission." The victim said he did not want to have sex with the defendant, but the defendant told him he would not like what happened if he did not. The defendant sexually assaulted the victim. After the assault, the victim went to the bathroom, cried, and went home. He did not tell anyone of the incident.

The victim went to stay with his mother in Chicago again after the incident with the defendant. He returned to Bridgeport to live with his father in 2007. After returning to Bridgeport, the victim saw the defendant again. On one evening, the victim was walking with his girlfriend and the defendant pulled up alongside them in his car. He asked the victim if he wanted to get out of the group, and the victim replied that he did. Later, the victim and the defendant were together, and the defendant took the victim to a studio apartment on Wood Avenue. The defendant told the victim that to finish with the group he had to do the same "mission" as in 2006. The victim said he would not do it. The defendant again sexually assaulted the victim. The victim did not tell anyone about this incident at the time it occurred.

The victim started skipping school and selling drugs with his friends. His father did not approve of either of these activities and beat the victim when he discovered that the victim was participating in them. During one incident with his father, the victim decided that he "was just fed up with everything . . . [and] didn't want to go through it no more" and he told his father about the incidents with the defendant. His father called the police, but the victim jumped out of the window of his father's second-floor apartment because he did not want to "deal with [the defendant] in that way." Later, the victim spoke with the police, but declined to give details regarding the incidents.

The final incident between the victim and the defendant occurred in March, 2008. The victim was walking in Bridgeport and the defendant confronted the victim in a Walgreen's parking lot. The defendant called to the victim, and the victim got into a car with the defendant. After dropping others off, the defendant took the victim to a location in the Beachwood neighborhood. The defendant pulled up to an apartment complex and both he and the victim got out of the car in an underground parking garage. The defendant told the victim he had to perform the "mission" again. The defendant again sexually assaulted the victim. Afterward, the victim ran home and told his cousin what had happened. The victim, his father, and another individual went looking for the defendant but did not find him; when they returned home, they called the Bridgeport police. The victim was taken to the St. Vincent's hospital where he was examined by the medical staff. The staff performed the procedures required for a sexual assault collection kit.[2]

---

[2] Dr. Marsha Zellner, the physician who examined the victim, testified that the kit involved: a complete head to toe physical examination, looking for bite marks, dirt, and other abnormalities; an anal swab; an anal smear; and a penile swab.

The defendant was charged, by way of a long form amended information, with three counts of aggravated sexual assault in the first degree, three counts of sexual assault in the second degree, and three counts of risk of injury to a child. The defendant was tried before a jury in May, 2011. During the direct examination of the victim's father, defense counsel objected to the testimony regarding what the victim told his father. Without the jury present, the prosecutor discussed his intention to present the father as a constancy witness to testify to the "who, what, when and where" of the victim's accusation. The court allowed the testimony of the victim's father pursuant to the constancy of accusation exception to the hearsay rule, and the victim's father testified to that information before the jury. Following the conclusion of the state's evidence, the defendant moved for judgment of acquittal on the basis that the state had not provided sufficient evidence to prove beyond a reasonable doubt the defendant's age, the alleged inappropriate conduct, or the presence of a weapon. The court denied the motion.

In its instructions to the jury, the court specifically discussed the constancy of accusation exception to the hearsay rule. It stated, in relevant part: "The State offered evidence of out-of-court statements made by [the victim] to his father; that the defendant sexually assaulted him. So [the victim's] father testified as to the statements [the victim] made regarding the defendant sexually assaulting him. This evidence by the father is to be considered by you *only in determining the weight and credibility* you will give to [the victim's] testimony as it pertains to the present charges. The evidence of out-of-court statements made by [the victim] of a sexual assault against him by the defendant is *not to be considered by you to prove the truth of the matter asserted* in those out-of-court statements testified to by his father.

"In determining whether or not these out-of-court statements corroborate the testimony of [the victim] here in court, you should consider all of the circumstances under which they were made, to whom they were made, and whether the statements made to the father were or were not consistent with [the victim's] testimony in court." (Emphasis added.) The defendant did not submit a specific request to charge, and he did not object to the instructions at the time they were given.

The jury returned a verdict of guilty as to the three counts of sexual assault in the second degree in violation of § 53a-71 (a) (1) and the three counts of risk of injury to a child in violation of § 53-21 (a) (2). The court rendered judgment in accordance with the verdict on August 26, 2011, and sentenced the defendant to seventeen years imprisonment, execution suspended after eleven years, with twenty-five years probation on each of the counts of sexual assault in the second degree, and eleven years imprisonment for each of the counts of risk of injury to a child. The court ordered the sentences on all counts to run concurrently. This appeal followed.

The defendant claims that the court's instructions violated his due process rights. Specifically, he argues that the court's instructions on constancy of accusation encouraged the jury to use the testimony of the victim's father to bolster the victim's credibility and to use "valueless evidence" to determine the defendant's guilt.

The defendant failed to preserve this claim at trial, as he neither submitted a request to charge the jury on the issue, nor objected to the court's instructions. The defendant requests review pursuant to *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989). We will review an unpreserved claim when "(1) the record is adequate to review the alleged claim of error; (2) the claim is of

constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Footnote omitted.) Id., 239–40. Here, the record is adequate to review the alleged claim of error. The defendant argues that the instruction was an error of constitutional magnitude because it violated his right to due process pursuant to the fourteenth amendment and article I, § 8, of the Connecticut constitution.[3] We disagree.

The admissibility of constancy of accusation testimony in Connecticut is well established. "Connecticut is one of only five states that continues to permit testimony regarding the details of a sexual assault victim's complaint even if such testimony is not otherwise admissible"; (footnote omitted) *State* v. *Troupe*, 237 Conn. 284, 299–300, 677 A.2d 917 (1996); but "a person to whom a sexual assault victim has reported the assault may testify only with respect to the fact and timing of the victim's complaint; any testimony by the witness regarding the details surrounding the assault must be strictly limited to those necessary to associate the victim's complaint with the pending charge, including, for example, the time and place of the attack or the identity of the alleged perpetrator." Id., 304.

When considering instructions on admitted evidence, our Supreme Court has noted that "every claim of

---

[3] The defendant also argues that this claim is reviewable under plain error. Upon review of the entire record, we conclude that the present case does not present one of the truly extraordinary situations in which the existence of the claimed error is so obvious that it affects the fairness and integrity of, and public confidence in, the judicial proceedings. See *State* v. *Cutler*, 293 Conn. 303, 326–27, 977 A.2d 209 (2009); *State* v. *Antwon W.*, supra, 118 Conn. App. 202.

instructional error is not truly constitutional in nature."
(Internal quotation marks omitted.) *State* v. *LaBrec*,
270 Conn. 548, 557, 854 A.2d 1 (2004). The governing
precedent on constancy of accusation testimony, *State*
v. *Antwon W.*, supra, 118 Conn. App. 201, states: "Our
Supreme Court repeatedly has noted that it has recog-
nized instructional claims as raising constitutional
issues only in matters relating to the elements of an
offense, burden of proof and the presumption of inno-
cence." The defendant argues that we should not apply
*Antwon W.* in the present case because issues of
improper instruction relating to constancy of accusa-
tion testimony will continue without a decision in this
case. The defendant does not, however, sufficiently dis-
tinguish this case from the instructions and analysis in
*Antwon W.* to warrant a departure from the standard
established therein. In fact, the defendant notes the
striking similarity between the instruction given here
and that given by the court in *Antwon W.*[4]

The defendant argues that we should depart from
*Antwon W.* here because the instruction invites the jury

[4] In *State* v. *Antwon W.*, supra, 118 Conn. App. 199–200, the trial court
stated in relevant part: "Constancy of accusation. The complainant testified
here in court before you. Her testimony in court you may use as evidence
and proof of the facts asserted in that testimony and give it the weight you
find is reasonable. The state offered evidence of out-of-court statements
made by the complainant to other persons that the defendant sexually
assaulted her. . . . This evidence by each of these witnesses is admitted
solely to corroborate or not corroborate the complainant's testimony in
court. It is to be considered by you only in determining the weight and
credibility you will give to the complainant's testimony given here in court.

"This evidence of out-of-court statements by the complainant of a sexual
assault against her by the defendant is not to be considered by you to prove
the truth of the matter asserted, the truth of what is said, in those out-of-
court statements, but it is presented for you to consider in assessing the
credibility you will give to the complainant's in-court testimony.

"In determining whether these out-of-court statements are corroborative
or not corroborative of the complainant's testimony in court, you should
consider all the circumstances under which these out-of-court statements
were made and to whom and whether the statements made to those persons
were or were not consistent with the complainant's testimony in court."
(Internal quotation marks omitted.)

to make inculpatory evidence "out of nothing." We are not persuaded. The court specifically stated how the jury could use the testimony from the victim's father regarding the victim's explanation of the alleged abuse. The court stated in relevant part that "evidence by the father is to be considered . . . *only in determining the weight and credibility* you will give to [the victim's] testimony as it pertains to the present charges." (Emphasis added.) We do not agree with the defendant that this encouraged the jury to find for the state or to give undue weight to the testimony of the victim's father. Rather, the jury was instructed, as in *Antwon W.*, on the appropriate use of constancy of accusation evidence and its relationship to the victim's testimony.

The introduction of constancy of accusation testimony for the purposes of corroborating the fact of a victim's complaint does not violate the constitutional fair trial rights of defendants in sexual assault cases. *State* v. *Troupe*, supra, 237 Conn. 305. Accordingly, the issue of instructional error does not rise to the level of constitutional error so as to warrant *Golding* review. *State* v. *Antwon W.*, supra, 118 Conn. App. 201. We decline to depart from the standard already established, and therefore do not reach the merits of the defendant's claim of error.

The judgment is affirmed.

In this opinion the other judges concurred.