******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ANTWON W.* *v.* COMMISSIONER
OF CORRECTION
(AC 37661)

Lavine, Beach and Flynn, Js.

*Argued January 10—officially released May 9, 2017*

(Appeal from Superior Court, judicial district of
Tolland, Sferrazza, J.)

*Peter Tsimbidaros*, assigned counsel, for the appellant (petitioner).

*Michele C. Lukban*, senior assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, and *Eva B. Lenczewski*, supervisory assistant state's attorney, for the appellee (respondent).

*Opinion*

FLYNN, J. The petitioner, Antwon W., appeals from the judgment of the habeas court denying his second amended petition for a writ of habeas corpus alleging ineffective assistance of counsel. He claims that, contrary to the decision of the habeas court, his trial counsel rendered ineffective assistance by failing to (1) adequately protect his constitutional right to an impartial jury; (2) object to the jury instructions provided by the trial court, *Cremins, J.,*[1] regarding the proper use of constancy of accusation evidence; (3) adequately cross-examine or otherwise impeach the victim; (4) advise him to accept the state's plea offer rather than proceed to trial; and (5) investigate and call witnesses who would have provided exculpatory testimony. We affirm the judgment of the habeas court.

The petitioner sexually assaulted his twelve year old cousin four times from 2002 through 2003 at his uncle's home. *State* v. *Antwon W.*, 118 Conn. App. 180, 181–84, 982 A.2d 1112 (2009), cert. denied, 295 Conn. 922, 991 A.2d 568 (2010). In 2006, the petitioner, who was eighteen years old at the time of the assaults, was convicted of one count of sexual assault in the third degree, six counts of sexual assault in the first degree,[2] and one count of risk of injury to a child. Id., 184–85. Attorney Gregory St. John represented the petitioner throughout the criminal trial. Judge Cremins sentenced the petitioner to an effective term of fifteen years imprisonment followed by fifteen years of special parole. Id., 185. This court upheld the petitioner's conviction on direct appeal. Id., 182.

Thereafter, the petitioner filed a second amended petition for a writ of habeas corpus setting forth numerous claims of ineffective assistance of counsel.[3] As relevant to this appeal, the petitioner alleged that Attorney St. John performed deficiently because he failed to (1) ensure that the petitioner was tried before an impartial jury by neglecting to ask prospective jurors during voir dire whether they had been the victim of sexual assault, and by failing to investigate potential juror bias after one of the jurors expressed concerns during deliberations; (2) object to Judge Cremins' instructions to the jury regarding the proper use of constancy of accusation evidence; (3) adequately cross-examine or otherwise impeach the state's witnesses; (4) provide the petitioner with adequate legal advice regarding the state's plea offers, or advise him that accepting a plea offer, rather than proceeding to trial, was in his best interests; and (5) investigate and call witnesses who could have provided exculpatory evidence.[4] The petitioner further alleged that, if not for these acts and omissions by Attorney St. John, there was a reasonable probability he would have prevailed in his criminal trial.

A habeas trial was held on September 23 and 24,

2014. Prior to trial, the respondent, the Commissioner of Correction, filed a motion in limine to preclude the petitioner from introducing testimony from the jurors in his criminal trial regarding their deliberative process. The habeas court granted that motion and subsequently denied the petitioner's motion for reconsideration. At the habeas trial, the petitioner testified on his own behalf and presented testimony from Attorney Leon Kaatz, an expert in criminal defense practice. Attorney St. John testified for the respondent. The habeas court denied the petitioner's second amended petition in a memorandum of decision dated December 18, 2014. Following the granting of certification to appeal, this appeal followed. Additional facts and procedural history will be set forth where necessary.

We begin by setting forth our standard of review and the legal principles that govern claims of ineffective assistance of counsel. "The habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous. . . . Historical facts constitute a recital of external events and the credibility of their narrators. . . . Accordingly, [t]he habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony. . . . The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact, which is subject to plenary review." (Citations omitted; internal quotation marks omitted.) *Gaines* v. *Commissioner of Correction*, 306 Conn. 664, 677, 51 A.3d 948 (2012).

As the United States Supreme Court articulated in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), "[a] claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong, a claimant must demonstrate that counsel made errors so serious that counsel was not functioning as the counsel guaranteed . . . by the [s]ixth [a]mendment. . . . Put another way, the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . Because both prongs . . . must be established for a habeas petitioner to prevail, a court may dismiss a petitioner's claim if he fails to meet either prong." (Citations omitted; internal quotation marks omitted.) *Thompson* v. *Commissioner of Correction*, 131 Conn. App. 671, 690–91, 27 A.3d 86, cert. denied, 303 Conn. 902, 31 A.3d 1177 (2011).

Furthermore, in analyzing the performance prong of

*Strickland*, our focus is on "whether counsel's assistance was reasonable considering all the circumstances. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . .

"Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. . . . At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (Citation omitted; internal quotation marks omitted.) *Gaines* v. *Commissioner of Correction*, supra, 306 Conn. 679–80.

As a preliminary matter, the petitioner argues that we should apply the cumulative error doctrine in determining whether he was prejudiced by Attorney St. John's purported deficiencies. Our appellate courts, however, have consistently declined to adopt this method of review. "When faced with the assertion that the claims of error, none of which individually constituted error, should be aggregated to form a separate basis for a claim of a constitutional violation of a right to a fair trial, our Supreme Court has repeatedly decline[d] to create a new constitutional claim in which the totality of alleged constitutional error is greater than the sum of its parts." (Internal quotation marks omitted.) *Anderson* v. *Commissioner of Correction*, 148 Conn. App. 641, 645, 85 A.3d 1240, cert. denied, 311 Conn. 945, 90 A.3d 976, cert. denied sub nom. *Anderson* v. *Dzurenda*, U.S. , 135 S. Ct. 201, 190 L. Ed. 2d 155 (2014); see *State* v. *Tillman*, 220 Conn. 487, 505, 600 A.2d 738 (1991), cert. denied, 505 U.S. 1207, 112 S. Ct. 3000, 120 L. Ed. 2d 876 (1992). Because it is not within the province of this court to reevaluate decisions of our Supreme Court; *Anderson* v. *Commissioner of Correction*, supra, 645; we lack authority under the current state of our case law[5] to analyze the petitioner's ineffective assistance claims under the cumulative error rule. Moreover, application of the cumulative error rule would not entitle the petitioner to relief because not one of Attorney St. John's purported trial errors constitutes deficient performance under *Strickland*. See *Henderson* v. *Commissioner of Correction*, 104 Conn. App. 557, 567, 935 A.2d 162 (2007), cert. denied, 285 Conn. 911, 943 A.2d 470 (2008).

That threshold issue resolved, and mindful of the above legal principles, we now turn to the petitioner's claims on appeal.

## I

The petitioner first claims that the habeas court erred in concluding that Attorney St. John did not render ineffective assistance of counsel by failing to adequately protect his constitutional right to an impartial jury. In support of this claim, the petitioner argues (1) that Attorney St. John was ineffective because, during voir dire, he neglected to ask any of the potential jurors whether they or someone close to them had been the victim of sexual assault; (2) that Attorney St. John was ineffective because he failed to request a more searching inquiry into potential juror bias or misconduct after a juror raised concerns about another juror's "personal past" during deliberations; and (3) that the habeas court improperly granted the respondent's motion in limine precluding him from calling the jurors as witnesses in his habeas trial to establish that juror bias existed and prejudiced him in his criminal trial.[6] We address each of these arguments in turn.

## A

The petitioner first contends that Attorney St. John rendered ineffective assistance during voir dire because he failed to ask potential jurors whether they or someone close to them had been a victim of sexual assault. We disagree.

The record discloses the following facts. The trial court, *Prescott, J.*, conducted jury selection from April 17 through April 19, 2006. At the start of each day, prior to the commencement of individual voir dire questioning, Judge Prescott informed each of the venire panels that the purpose of voir dire was to ascertain each prospective juror's ability to be impartial, instructed the panel to answer questions accurately and to the best of their ability, and posed an array of preliminary questions to the panels, including: "Have you had any life experiences that in any way relate to the charges in this case that might prevent you from being a fair and impartial juror? Do you have any bias or prejudices that could in any way come into play in sitting on this case?" Several members of the venire responded affirmatively to these preliminary questions and were ultimately excused for cause following individual voir dire because either they or their close friend or family member had been the victim of sexual assault. This is an indication in the record that Judge Prescott's preliminary questions were adequate to deal with any bias or prejudice that the prospective jurors may have had because either they or persons close to them had been victimized by sexual assault crimes.

None of the six venire members ultimately selected as jurors responded affirmatively to any of Judge Pres-

cott's preliminary questions. The six prospective jurors then appeared before Judge Prescott, the prosecutor, and Attorney St. John for individual voir dire. Judge Prescott began each examination by asking the prospective juror whether he or she was aware of anything that they thought might affect their ability to be fair and impartial. Each prospective juror responded in the negative. One prospective juror, V.B.,[7] stated in response to a subsequent question from Judge Prescott that she had "trouble" with the nature of the charges, but stated she could nonetheless be fair and impartial. Attorney St. John asked V.B. whether there was "any kind of a barrier to [her] being able to be a fair and impartial juror," to which V.B. responded that she believed she would be fair. Attorney St. John further asked V.B. if there was anything else the court and counsel should know that might impact her ability to be fair and impartial, and V.B. answered that she had lost a child.

Another prospective juror, J.B., informed Judge Prescott that she was "a little partial to the sexual offenses" because, given her training and work as a nurse, she tended to be more of a victim advocate. She indicated, however, that she would try to be fair. The prosecutor elicited from J.B. that, other than a patient she encountered at work, she had never known anyone who had been the victim of sexual assault. The four other prospective jurors were all asked, by Attorney St. John, the prosecutor or both of them, whether the nature of the charges or anything else impacted their ability to be impartial, and none of them raised concerns about past experiences with sexual assault.

In his habeas petition, the petitioner alleged that Attorney St. John provided ineffective assistance by failing to ask the jurors whether they had been the victim of sexual assault, which resulted in the empanelment of a juror who was biased against persons accused of sexual assault crimes.[8] The habeas court found that Attorney St. John's failure to pose this specific question did not amount to deficient performance because he and the prosecutor had "cover[ed] the same territory" by asking the jurors whether anything about the charges or their life experiences impacted their impartiality. The habeas court concluded that, under these circumstances, the failure to specifically ask whether the jurors had been a victim of sexual assault, "using those exact words, was inconsequential." We discern no error in that reasoning on appeal.

"Jury impartiality is a core requirement of the right to trial by jury guaranteed by the constitution of Connecticut, article first, § 8, and by the sixth amendment to the United States constitution." (Internal quotation marks omitted.) *State* v. *Miller*, 163 Conn. App. 772, 776, 137 A.3d 105, cert. denied, 321 Conn. 905, 136 A.3d 1273 (2016). The federal and state constitutions require juries to be "composed of individuals able to decide

the case solely on the evidence and apply the law in accordance with the court's instructions . . . ." *State* v. *Griffin*, 251 Conn. 671, 691–92, 741 A.2d 913 (1999). Voir dire is critical to protecting the right to an impartial jury because it reveals "information upon which the trial court may decide which prospective jurors . . . should be excused for cause . . . and . . . information to counsel which may aid them in the exercise of their right to peremptory challenge." (Internal quotation marks omitted.) *State* v. *Faust*, 237 Conn. 454, 462, 678 A.2d 910 (1996).

It is well established, however, that in determining whether trial counsel performed deficiently under *Strickland*, "[a]n attorney's line of questioning on examination of a witness clearly is tactical in nature. [As such, this] court will not, in hindsight, second-guess counsel's trial strategy." (Internal quotation marks omitted.) *Antonio A.* v. *Commissioner of Correction*, 148 Conn. App. 825, 832, 87 A.3d 600, cert. denied, 312 Conn. 901, 91 A.3d 907 (2014). Likewise, courts cannot prescribe a specific manner by which attorneys conduct voir dire, a process that "is inevitably a call upon [the trial lawyer's] experience and intuition."[9] *Romero* v. *Lynaugh*, 884 F.2d 871, 878 (5th Cir. 1989), cert. denied sub nom. *Romero* v. *Collins*. 494 U.S. 1012, 110 S. Ct. 1311, 108 L. Ed. 2d 487 (1990). For example, this court rejected a claim that the trial court erred in declining to suggest to trial counsel ways to rephrase voir dire questions because reviewing courts "cannot impose on a trial court the burden of suggesting to parties how they should conduct their cases." *State* v. *Charlton*, 30 Conn. App. 359, 367, 620 A.2d 1297, cert. denied, 225 Conn. 922, 625 A.2d 824 (1993). We therefore indulge a strong presumption that trial counsel's lines of inquiry during voir dire were reasonable. Habeas petitioners must bear the heavy burden of demonstrating that "there [was] no . . . tactical justification for the course taken." (Internal quotation marks omitted.) *Taft* v. *Commissioner of Correction*, 159 Conn. App. 537, 557, 124 A.3d 1, cert. denied, 320 Conn. 910, 128 A.3d 954 (2015).

The petitioner has not sustained that burden in the present case. Although Attorney St. John did not ask the prospective jurors the specific question of whether they or someone close to them had been the victim of sexual assault, the voir dire process as a whole adequately covered those subjects. Judge Prescott, in his preliminary questions, asked the members of each venire panel whether they had any "life experiences" or "bias or prejudices" that might color their ability to return a fair and impartial verdict. Attorney St. John and the prosecutor then asked each juror individually whether they knew of anything that might impact their impartiality. None of the jurors identified anything of concern, and each expressed confidence she or he could be impartial. Attorney St. John's failure to ask a

specific question that would have been largely cumulative of other questions does not render his performance deficient.[10] As we have stated, attorneys need not question jurors in any particular manner to be effective. Accordingly, the petitioner's claim fails to satisfy the performance prong of *Strickland*; we need not reach the issue of prejudice.

The petitioner further argues, without analysis, that Attorney St. John should have "asked that [J.B.] be excused for cause or should have exercised a peremptory challenge." To the extent the petitioner is attempting to raise a distinct claim of ineffective assistance, we disagree. This court has consistently recognized that decisions about whether to peremptorily strike particular jurors are matters of trial strategy. See *Smith* v. *Commissioner of Correction*, 116 Conn. App. 383, 389, 975 A.2d 751, cert. denied, 293 Conn. 925, 980 A.2d 912 (2009); *Beverly* v. *Commissioner of Correction*, 101 Conn. App. 248, 252, 922 A.2d 178, cert. denied, 283 Conn. 907, 927 A.2d 916 (2007); *Ziel* v. *Commissioner of Correction*, 89 Conn. App. 371, 378, 873 A.2d 239, cert. denied, 275 Conn. 920, 883 A.2d 1254 (2005). This deference soundly recognizes that a trial attorney is in the best position to determine whether a particular venireperson can fairly hear his client's cause. Here, J.B. repeatedly indicated that, despite her training and work as a nurse, she would try to be fair and had never known anyone who had been the victim of sexual assault. Given these assurances, any claim by the petitioner that Attorney St. John's failure to strike J.B. was outside the realm of reasonable trial strategy lacks merit.

B

The petitioner next argues that Attorney St. John performed deficiently by failing to request a more thorough investigation into juror bias or misconduct after one of the jurors raised concerns during deliberations about another juror's "personal past." We disagree.

The jury began deliberating on May 15, 2006. The following morning, on May 16, 2006, Judge Cremins brought one of the jurors, L.B., into the courtroom because she had "expressed a concern." The following exchange ensued:

"The Court: If the concern is something not related to deliberations, I want you to tell me what that is. If it's the other, if the concern relates to the deliberations, that's not anything that we can discuss. Okay. Let's first of all tell me which it relates to?

"[L.B.]: *Well, it came out during deliberations; however, I think it really doesn't concern deliberations. I think it could affect the deliberations, but it's not really a result of the deliberations.*

"The Court: Let me ask you a couple of questions. Is it something related to someone's health?

"[L.B.]: No. . . .

"The Court: It's not related to personality?

"[L.B.]: No.

"The Court: Is it related at all to their punctuality or their participation?

"[L.B.]: No.

"The Court: So, it sounds like it's related then to your deliberation discussion.

"[L.B.]: It's her. It's, I know, I think, if I say these two words it might clear it up for both of us.

"The Court: I, again, if the concern you have relates to anything related to the deliberations, whether it's the person's attitude, their participation, their position, their advocacy, that's not something we can discuss. So, if you think it falls into any one of those categories—

"[L.B.]: You may make it hard. . . .

"The Court: I think it sounds like it might be related to the deliberations in terms of those things that I mentioned.

"[L.B.]: I think it can affect deliberations. I don't know. That's it.

"The Court: Well, okay.

"[L.B.]: *It's not a cause because of deliberations. It's a personal past thing, someone's personal past is what it is. It is my concern how it might relate.*

"The Court: Okay. All right. . . . I will ask you to step outside for just a moment. Thank you." (Emphasis added.)

Outside the presence of L.B., Judge Cremins stated that he did not "see any reason why we should not continue." The prosecutor and Attorney St. John agreed with Judge Cremins. L.B. returned to the courtroom, and the court informed her that it would not inquire any further into her concern and instructed her to continue in the deliberations. The jury returned a guilty verdict the following day.

In his habeas petition, the petitioner alleged that L.B. had been referring to a female juror who previously had been the victim of sexual assault, and that Attorney St. John rendered ineffective assistance by failing to request a more searching inquiry into the potential bias. The habeas court rejected this claim, concluding that it was pure speculation to suppose that L.B. had been referring to a juror who had been the victim of sexual assault, especially in light of each of the jurors' representations during voir dire that none of her or his past experiences impacted her or his ability to be fair and impartial. Additionally, citing *Warger* v. *Shauers*, U.S.    , 135 S. Ct. 521, 190 L. Ed. 2d 422 (2014), the

habeas court disagreed that Attorney St. John performed deficiently by failing to request a more thorough inquiry into L.B.'s concerns.[11] The habeas court emphasized that *Warger*, while not binding in the present case, reflects the principle that "trial courts and litigants must exercise great caution when asked to intrude upon the sanctity of deliberations."[12] Accordingly, the habeas court concluded that Attorney St. John had to "tread lightly" in determining how extensively to inquire into L.B.'s concerns, and that, because the stated bases for L.B.'s concerns were vague, Attorney St. John's failure to request a more extensive investigation did not amount to deficient performance.

We agree with the habeas court's ultimate determination that the petitioner failed to satisfy the performance prong of *Strickland*. As an initial matter, we note that the petitioner made little effort at the habeas trial to overcome the presumption that Attorney St. John's decision not to pursue further questioning of L.B. was based upon reasonable professional judgment. See *Gaines* v. *Commissioner of Correction*, supra, 306 Conn. 679–80. The petitioner did not question Attorney St. John about it, nor did he elicit an opinion from Attorney Kaatz about whether the response was constitutionally adequate.

In any event, our review of the record convinces us that, under the circumstances, Attorney St. John's decision that further inquiry was unnecessary was not objectively unreasonable. L.B. explained during her brief colloquy with Judge Cremins that she was concerned about an unnamed female juror's "personal past" and how it "might relate" to deliberations. Attorney St. John was not required to infer from these statements that the jury's deliberations were infected by actual bias or misconduct. Rather, L.B.'s statements could easily have been construed as suggesting merely that the unnamed juror's past experiences had informed her understanding of the case, which is entirely proper. "[J]urors . . . are not expected to lay aside matters of common knowledge or their own observations and experiences, but rather, to apply them to the facts as presented to arrive at an intelligent and correct conclusion." (Internal quotation marks omitted.) *State* v. *Warholic*, 278 Conn. 354, 365, 897 A.2d 569 (2006). Indeed, Attorney St. John stated following the colloquy that he believed a further investigation was unnecessary because "when [jurors] come into this building . . . they bring their life experiences with them, and they bring those life experiences so they can utilize that in terms of judging credibility of witnesses." Attorney St. John cannot have performed deficiently for failing to investigate statements that he reasonably interpreted to be innocuous.

We certainly do not agree with the petitioner's argument that L.B.'s reference to the female juror's "per-

sonal past" should have alerted Attorney St. John to the fact that the juror had been the victim of sexual assault and was therefore biased. L.B.'s statements did not suggest that any of the jurors had been the victim of a crime, and even if they did, a juror's status as a victim or concealment of information during voir dire does not mean that the juror cannot be impartial. "It is actual bias, rather than bias that is implied on the basis of a juror's status [as a victim] or on the basis of a juror's dishonesty during voir dire, that is dispositive in raising a claim of bias from the realm of speculation to the realm of fact." *State* v. *Myers*, 244 Conn. 683, 689–90, 711 A.2d 704 (1998). Each juror repeatedly stated during voir dire that she or he could return a fair and impartial verdict based on the evidence, assurances upon which Attorney St. John was entitled to rely. Cf. *State* v. *Ziel*, 197 Conn. 60, 66, 495 A.2d 1050 (1985) ("it was not unreasonable for the trial court to assume that the voir dire examination would disclose any prejudice upon the part of a prospective juror" [internal quotation marks omitted]).

The petitioner has therefore failed to establish deficient performance. As our Supreme Court has recognized, "to perform effectively, counsel need not recognize and raise every conceivable . . . claim." (Internal quotation marks omitted.) *Ledbetter* v. *Commissioner of Correction*, 275 Conn. 451, 460, 880 A.2d 160 (2005), cert. denied sub nom. *Ledbetter* v. *Lantz*, 546 U.S. 1187, 126 S. Ct. 1368, 164 L. Ed. 2d 77 (2006). Put simply, while Attorney St. John could have requested additional questioning of L.B., we do not believe that, under these circumstances, he was constitutionally required to do so to be an effective trial counsel.

The petitioner's reliance on *State* v. *Brown*, 235 Conn. 502, 668 A.2d 1288 (1995), is misplaced. In *Brown*, our Supreme Court invoked its supervisory authority to hold that "a trial court must conduct a preliminary inquiry, on the record, whenever it is presented with any allegations of jury misconduct in a criminal case, regardless of whether an inquiry is requested by counsel." (Footnote omitted.) Id., 526. The trial court has discretion to order additional proceedings, or a full evidentiary hearing, depending on what is disclosed during the preliminary inquiry. Id.

The petitioner was not entitled to a *Brown* inquiry because L.B. stated that her concern related to the unnamed juror's "personal past"—that is, something that arose *before* that juror was subject to voir dire. *Brown* does not require an inquiry into allegations of juror bias or misconduct where the purported taint accrued prior to voir dire because, in those situations, "voir dire itself provides a means to uncover [the] bias." *State* v. *Ross*, 269 Conn. 213, 248, 849 A.2d 648 (2004). This court has explained that *Brown* "operates in the sphere of juror misconduct claims, while the voir dire

process properly allows counsel to investigate fully bias, preconceived notions and the like. The voir dire process is designed to weed out those who are unfit to serve because of prejudicial notions." *State* v. *Malave*, 47 Conn. App. 597, 606, 707 A.2d 307 (1998), aff'd, 250 Conn. 722, 737 A.2d 442 (1999), cert. denied, 528 U.S. 1170, 120 S. Ct. 1195, 145 L. Ed. 2d 1099 (2000); see also *State* v. *Ross*, supra, 247 n.23. In addition to the voir dire questions posed by Attorney St. John and the prosecutor, Judge Prescott's questions to the panel were designed to reach any partiality or bias. We therefore conclude that Attorney St. John was not deficient for failing to pursue a *Brown* inquiry because the petitioner was not entitled to any such inquiry. Accordingly, the habeas court properly concluded that the petitioner failed to demonstrate deficient performance under *Strickland*.

C

The petitioner next argues that the habeas court improperly precluded him from calling the jurors as witnesses in his habeas trial to establish that juror bias existed in his criminal trial. This argument relates solely to the petitioner's ability to establish the prejudice prong of *Strickland*. Because, however, we are affirming the decision of the habeas court with regard to this claim of ineffective assistance on the basis of the performance prong; see parts I A and B of this opinion; the issue of prejudice is not germane to our discussion. "A court evaluating an ineffective assistance claim need not address both components of the *Strickland* test if the [claimant] makes an insufficient showing on one." (Internal quotation marks omitted.) *Ouellette* v. *Commissioner of Correction*, 154 Conn. App. 433, 448 n.9, 107 A.3d 480 (2014). Accordingly, we need not address the merits of this argument.

II

The petitioner next claims that Attorney St. John rendered ineffective assistance by failing to object to the jury instructions provided by Judge Cremins regarding the proper use of constancy of accusation evidence. We are not persuaded.

The following additional facts are relevant to our discussion of this claim. During the petitioner's criminal trial, the state introduced testimony from three constancy of accusation witnesses, T, B, and S, who each testified about their conversations with the victim in early 2004 in which the victim reported that she had been sexually assaulted on multiple occasions by the petitioner. See *State* v. *Antwon W.*, supra, 118 Conn. App. 193–94. Prior to the testimony of T, Judge Cremins instructed the jury as follows: "Ladies and gentlemen, before this testimony begins, I want to explain a couple of things to you. There are times when evidence is admitted for a limited purpose. You can use it for one

purpose, but you can't use it for another purpose. The testimony here is going to be one of those situations. So, I want to tell you, at this point, the purpose for which you can use the testimony that [T] is about to give. *The evidence by this witness is admitted solely to corroborate or not corroborate the complainant's testimony in court. It is to be considered by you only in determining the weight and credibility you will give to the complainant's testimony given here in court.* This evidence of out-of-court statements by the complainant of an alleged sexual assault against her, that is, the complainant, by the [petitioner], is not to be considered by you to prove the truth of the matter asserted, that is, the proof of what is said in those out-of-court statements, *but it is to be presented for you to consider in assessing the credibility for you to give to the complainant's in-court testimony.*" (Emphasis added.) Judge Cremins repeated a similar limiting instruction before B and S testified, and again after S testified.

After the close of evidence, Judge Cremins charged the jury, in relevant part, as follows: "Constancy of accusation. The complainant testified here in court before you. Her testimony in court you may use as evidence and proof of the facts asserted in that testimony and give it the weight you find is reasonable. The state offered evidence of out-of-court statements made by the complainant to other persons that the [petitioner] sexually assaulted her. This court's recollection of those persons to whom the alleged victim made such statements are [T], [B] and [S]. Each of these people testified as to the statements the complainant made to each of them regarding the [petitioner's] alleged sexual assaulting of her. *This evidence by each of these witnesses is admitted solely to corroborate or not corroborate the complainant's testimony in court. It is to be considered by you only in determining the weight and credibility you will give to the complainant's testimony given here in court.*

"This evidence of out-of-court statements by the complainant of a sexual assault against her by the [petitioner] is not to be considered by you to prove the truth of the matter asserted, the truth of what is said, in those out-of-court statements, but *it is presented for you to consider in assessing the credibility you will give to the complainant's in-court testimony.*

"In determining whether these out-of-court statements are corroborative or not corroborative of the complainant's testimony in court, you should consider all the circumstances under which these out-of-court statements were made and to whom, and whether the statements made to those persons were or were not consistent with the complainant's testimony in court.

"*To the extent you find what she said outside the courtroom is consistent with her testimony in court,*

*you may find the complainant's testimony in court to be corroborated or supported.* To the extent you find what the complainant has said outside the courtroom is inconsistent with her testimony in court, you may consider the degree of inconsistency which you may find, and you may consider the reasons you may find for the inconsistency in evaluating her testimony given here in court." (Emphasis added.) Attorney St. John did not object to this jury instruction or to any of the limiting instructions provided by Judge Cremins in connection with the testimony of T, B, and S.[13]

In his habeas petition, the petitioner alleged that Attorney St. John provided ineffective assistance by failing to object to the foregoing charge and limiting instructions, which he asserted encouraged the jury to consider the constancy of accusation testimony for substantive purposes, rather than for the limited purpose of corroborating only the fact and timing of the victim's complaint. The habeas court rejected this claim, finding that the petitioner failed to demonstrate prejudice. The habeas court ruled that, even if the instructions suggested that the constancy of accusation testimony could be used to corroborate the victim's testimony as to matters beyond the mere fact and timing of her complaint, any overbreadth "was very minor and insubstantial, considering all the other evidence in this case, and had no discernible effect on the jury's deliberations." The habeas court further found that the constancy of accusation evidence was properly limited to only those details necessary to associate the victim's reports to the charged assaults, and that the instructions "played no role in persuading the jurors to accept or reject the victim's accusations against the petitioner . . . ."

The petitioner claims that the habeas court erred in concluding that the jury instructions did not prejudice him. He argues that the language, repeated in each instruction, that the evidence was admitted to "corroborate or not corroborate the victim's testimony in court" encouraged the jury to consider the evidence for substantive purposes, in violation of *State* v. *Troupe*, 237 Conn. 284, 677 A.2d 917 (1996). In *Troupe*, our Supreme Court concluded that constancy of accusation witnesses "may testify only with respect to the fact and timing of the victim's complaint; any testimony by the witness regarding the details surrounding the assault must be strictly limited to those necessary to associate the victim's complaint with the pending charge, including, for example, the time and place of the attack or the identity of the alleged perpetrator. . . . Thus, such evidence is admissible only to corroborate the victim's testimony and not for substantive purposes."[14] Id., 304. We agree with the habeas court that, even if we were to assume that Attorney St. John's failure to object to the challenged language of the instructions amounted to deficient performance, the petitioner failed to dem-

onstrate prejudice.

To establish prejudice under the *Strickland* test, habeas petitioners "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. . . . [T]he question is whether there is a reasonable probability that, absent the [alleged] errors, the [fact finder] would have had a reasonable doubt respecting guilt. . . .

"In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or the jury. . . . Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. . . . [T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged. . . . The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." (Citations omitted; internal quotation marks omitted.) *Gaines* v. *Commissioner of Correction*, supra, 306 Conn. 688–89.

As an initial matter, we disagree that, considered in their entirety, the jury instructions were likely to have misled the jury into considering the constancy of accusation evidence for substantive purposes. See *Hickey* v. *Commissioner of Correction*, 162 Conn. App. 505, 521, 133 A.3d 489 (2016) ("[t]he whole charge must be considered from the standpoint of its effect on the [jurors] in guiding them to the proper verdict . . . and not critically dissected in a microscopic search for possible error" [internal quotation marks omitted]). Despite any arguable imprecision in the language providing that the constancy evidence may be considered as "corroborating or not corroborating the victim's testimony in court," the instructions also provided that the victim's out-of-court statements are "not to be considered by you to prove the truth of the matter asserted, that is, the proof of what is said in those out-of-court statements . . . ."[15] The use of this language, which clearly distinguishes between constancy of accusation evidence and substantive evidence, diminishes the likelihood that the instructions misled the jury and prejudiced the petitioner. See *State* v. *Daniel W. E.*, 322 Conn. 593, 613–14, 142 A.3d 265 (2016).[16]

Furthermore, we agree with the habeas court's finding that, considering the totality of the evidence admitted in the petitioner's criminal trial, any overbreadth in

the constancy of accusation instructions had no effect on the jury's decision to credit the testimony of the victim, who testified in graphic detail about four instances in which the petitioner sexually assaulted her. Attorney St. John attempted to impeach the victim's credibility by emphasizing that she did not report the assaults until months after they allegedly occurred, and had struggled to recall certain details surrounding the assaults. The victim's inability to recall extended only to minor details, however, and her statement to the police, which was admitted into evidence without limitation as a full exhibit, showed that she remained consistent with regard to the details of the assaults themselves.

More significantly, substantial evidence corroborated the victim's testimony that she delayed in reporting the assaults not because she had fabricated them, but because she was afraid of the petitioner and thought that the assaults were her fault. Diane Edell, a clinical social worker and expert in the field of child sexual abuse, testified that child victims do not typically disclose their abuse immediately, but, rather, do so reluctantly and incrementally, often after a significant passage of time. This dynamic is especially prevalent, Edell explained, where the victim's assailant is a close family member, because the victim retains a sense of loyalty toward the assailant and does not want to get them into trouble. Consistent with the testimony of the victim and Edell, T and S testified that the victim was crying and seemed reluctant and afraid to tell them about the assaults.[17] Sara Kasper, the physician who treated the victim after she reported the assaults to the police, testified that the victim identified her "cousin" as the person who assaulted her and became emotional when discussing the details of the abuse.[18] B also testified that, during the summer of 2003—when the assaults were still ongoing—the victim indicated that she was frightened of the petitioner and was afraid to visit her uncle's house if the petitioner were there. B recalled one occasion during that time period when, while bringing the victim to her uncle's house, the victim started to cry after learning that the petitioner would be there.

Accordingly, the state's case against the petitioner was strong even without the constancy of accusation evidence because the credibility of the victim's testimony was bolstered by independent sources. See *State* v. *Samuels*, 273 Conn. 541, 565, 871 A.2d 1005 (2005) (improper use of constancy of accusation evidence not prejudicial where state's case relied on independent sources of evidence); *State* v. *Kelly*, 256 Conn. 23, 40, 770 A.2d 908 (2001) (same). As this court has observed, "[t]he stronger the case, the less probable it is that a particular error caused actual prejudice." (Internal quotation marks omitted.) *Weinberg* v. *Commissioner of Correction*, 112 Conn. App. 100, 115, 962 A.2d 155, cert. denied, 291 Conn. 904, 967 A.2d 1221 (2009). We

therefore conclude that the petitioner failed to demonstrate a reasonable probability that, had Attorney St. John objected and obtained jury instructions that conformed more precisely to the limitations of *Troupe*, the result of his criminal trial would have been different. Accordingly, the habeas court properly rejected this claim of ineffective assistance of counsel.

### III

The petitioner next claims that "the habeas court erred in denying the claim of ineffective assistance of counsel. Trial counsel failed to adequately [cross-examine] and otherwise impeach the [victim]." We decline to review this claim because it was inadequately briefed.[19]

"We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. . . . The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited." (Citation omitted; internal quotation marks omitted.) *State* v. *Buhl*, 321 Conn. 688, 724, 138 A.3d 868 (2016).

In his brief, the petitioner began by observing that "the direct and cross-examinations of the [victim] were of paramount importance" because the state's case "hinged" on the victim's credibility. He then sets forth numerous paragraphs of case law discussing the *Strickland* performance standard in the context of cross-examinations. The petitioner makes no attempt, however, to analyze how Attorney St. John's cross-examination or impeachment of the victim fell below the objective standard of reasonableness. He does not identify any subject matter that Attorney St. John could have explored but failed to explore. The only substantive discussion concerns Attorney St. John's failure to object to evidence adduced by the prosecutor during the victim's direct examination, an entirely distinct theory of ineffective assistance. The petitioner's claim as it relates to inadequate cross-examination is entirely unsupported by analysis or citation to the record. Accordingly, we decline to review it.

### IV

The petitioner's next claim is that Attorney St. John rendered ineffective assistance because he failed to provide the petitioner with adequate legal advice regarding whether to accept the state's plea offers. Specifically, he claims that Attorney St. John failed to "render any advice, candid or otherwise, that [the petitioner] should accept any [plea] offers made." A careful review

of the petitioner's brief, however, reveals that his claim on appeal relates solely to the performance prong of *Strickland*, whereas the habeas court rejected this claim of ineffective assistance on the basis of the prejudice prong. Crediting Attorney St. John's testimony that the petitioner expressed a "strong desire" to have the jury decide the case, the habeas court concluded that the petitioner failed to demonstrate that he would have accepted any plea offer had Attorney St. John recommended that he do so. Because the petitioner has not challenged the habeas court's finding with regard to prejudice, he cannot prevail on this claim. See *Fullenwiley* v. *Commissioner of Correction*, 163 Conn. App. 761, 765, 134 A.3d 1259, cert. denied, 321 Conn. 907, 135 A.3d 279 (2016).

V

The petitioner's final claim is that Attorney St. John was ineffective because he "failed to conduct an adequate investigation which would have led to available exculpatory evidence." The petitioner's brief discusses three pieces of allegedly overlooked evidence. The first concerns a witness, D, whom the petitioner claims could have impeached part of the victim's testimony. The habeas court correctly found that the petitioner failed to demonstrate prejudice with regard to this claim because D did not testify at the habeas trial. This court has explained that the failure to elicit testimony in the habeas court from allegedly exculpatory witnesses precludes a finding of prejudice because "[w]ithout their testimony, the habeas court [cannot] evaluate them as witnesses, nor [can] it assess the import of their testimony." *Henderson* v. *Commissioner of Correction*, 129 Conn. App. 188, 194, 19 A.3d 705, cert. denied, 303 Conn. 901, 31 A.3d 1177 (2011); see also *Townsend* v. *Commissioner of Correction*, 116 Conn. App. 663, 668, 975 A.2d 1282 (petitioner failed to show prejudice where only testimony at habeas trial regarding exculpatory witness came from petitioner), cert. denied, 293 Conn. 930, 980 A.2d 916 (2009).

The petitioner also argues that Attorney St. John failed to investigate a third party culpability witness who he refers to as "Tootsie." Although the petitioner testified about this witness at the habeas trial and mentioned the issue in his posttrial brief, the petitioner failed to specifically allege the failure to call this witness in his second amended habeas petition. Accordingly, the habeas court was not obligated to consider the claim, nor is this court on appeal. "Claims raised for the first time in posttrial briefs are not reviewable by the habeas court or by this court on appeal." *Davis* v. *Commissioner of Correction*, 160 Conn. App. 444, 454 n.7, 124 A.3d 992, cert. denied, 319 Conn. 957, 125 A.3d 1012 (2015). We also note that, although the habeas court did not rule on this claim, the petitioner failed as a matter of law to demonstrate prejudice because

Tootsie did not testify at the habeas trial, thus making it impossible for the habeas court to assess the significance of Tootsie's potential testimony. See *Townsend* v. *Commissioner of Correction*, supra, 116 Conn. App. 668.

Finally, the petitioner cites Attorney St. John's failure to offer into evidence the victim's records from the Department of Children and Families.[20] The habeas court found that the petitioner abandoned this claim because he failed to address it in his posttrial brief. The petitioner has not challenged the habeas court's finding of abandonment. Accordingly, we decline to address this claim.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to use the petitioner's full name or to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[1] Judge Cremins presided over the evidentiary portion of the victim's criminal trial and sentencing. Judge Prescott presided over jury selection.

[2] The petitioner was convicted of three counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1), and three counts of sexual assault in the first degree in violation of § 53a-70 (a) (2). *State* v. *Antwon W.*, supra, 118 Conn. App. 181–82. On June 22, 2015, the trial court, *Fasano, J.*, granted the petitioner's motion to correct an illegal sentence, concluding that the petitioner's sentences under § 53a-70 (a) (1) and (2) violated his double jeopardy rights because he was sentenced twice for the same offense. Accordingly, the court ordered that the petitioner's conviction of the three counts of sexual assault in the first degree under § 53a-70 (a) (2) be dismissed and that the sentences imposed on that conviction be vacated. Thereafter, the defendant filed a second motion to vacate an illegal sentence, asserting that the vacation of his conviction of those three counts rendered the total effective sentence imposed by Judge Cremins illegal. The court, *Fasano, J.*, denied that motion on December 9, 2015, reasoning that the sentencing court did not rely on any of the vacated charges in imposing the petitioner's sentence. The petitioner's appeal from that decision is pending before this court.

[3] The petitioner also alleged claims of judicial misconduct and actual innocence. The habeas court deemed those claims abandoned because they were not briefed or otherwise discussed by the petitioner in the habeas proceedings.

[4] The petitioner also alleged that his trial counsel was ineffective by failing to object to the state's filing of a substitute information prior to the start of jury selection that added a number of additional charges; by failing to adequately prepare defense witnesses prior to trial; by failing to object to expert testimony offered by the state; by introducing evidence damaging to the defense; and by performing inadequately during closing argument. The habeas court found each of those claims to be without merit, and the petitioner has not challenged those findings in this appeal. The petitioner also alleged that his trial counsel was ineffective for failing to provide him with adequate legal advice about whether to testify at his criminal trial, and by failing to obtain the victim's records from the Department of Children and Families. The habeas court found that those claims had been abandoned and did not address them.

[5] We note our Supreme Court's recent decision in *Hinds* v. *Commissioner of Correction*, 321 Conn. 56, 136 A.3d 596 (2016), in which the court declined to address whether the cumulative error doctrine was applicable in habeas proceedings because the cumulative effect of the claimed improprieties would not have justified relief under that doctrine. Id., 97 ("We are not persuaded that improprieties of this magnitude present a colorable basis for application of the cumulative error rule applied by the federal courts. Therefore, we need not consider whether our case law [declining to adopt the cumulative error rule] is in conflict with federal law.").

[6] The petitioner also contends that Attorney St. John rendered ineffective

assistance by failing to object to the prosecutor's improper attempts during voir dire to implant bias into potential jurors' minds by posing questions that previewed the state's theory of the case. See *State* v. *Lugo*, 266 Conn. 674, 684, 835 A.2d 451 (2003) ("[A]ll too frequently such inquiries [during voir dire] represent a calculated effort on the part of counsel to ascertain before the trial starts what the reaction of the venire[person] will be to certain issues of fact or law or, at least, to implant in his mind a prejudice or prejudgment on those issues. Such an effort transcends the proper limits of the voir dire and represents an abuse of the statutory right of examination." [Internal quotation marks omitted.]). That claim of ineffective assistance, however, is not reviewable in this appeal because, although the petitioner raised the issue in his posttrial reply brief, he failed to allege it in his second amended petition for a writ of habeas corpus. See *Davis* v. *Commissioner of Correction*, 160 Conn. App. 444, 454 n.7, 124 A.3d 992 ("[c]laims raised for the first time in posttrial briefs are not reviewable by the habeas court or by this court on appeal"), cert. denied, 319 Conn. 957, 125 A.3d 1012 (2015); *Oliphant* v. *Commissioner of Correction*, 146 Conn. App. 499, 528, 79 A.3d 77 ("[a] habeas court is not required to consider a claim that was not alleged [in the operative petition for habeas relief]"), cert. denied, 310 Conn. 963, 83 A.3d 346 (2013).

[7] We identify jurors by their initials to protect their privacy. See *State* v. *Dorans*, 261 Conn. 730, 749 n.23, 806 A.2d 1033 (2002).

[8] His assertion that one of the selected jurors previously had been the victim of sexual assault is based upon a concern raised by one of the jurors during the jury's deliberations, which we discuss in part I B of this opinion.

[9] Indeed, reviewing courts are limited in their ability to assess the reasonableness of trial counsel's tactics during voir dire because those tactics may often be dictated by a particular juror's demeanor, tone, and other physical characteristics not visible in the paper record. See *State* v. *Miller*, supra, 163 Conn. App. 776 ("demeanor plays an important part" in determining potential jurors' impartiality [internal quotation marks omitted]). That trial courts are accorded broad discretion in controlling the manner and scope of voir dire examinations; see *State* v. *Rios*, 74 Conn. App. 110, 114, 810 A.2d 812 (2002), cert. denied, 262 Conn. 945, 815 A.2d 677 (2003); reflects this reality. As the United States Court of Appeals for the Fifth Circuit has observed: "Written records give us only shadows for measuring the quality of such efforts. Indeed, we recognize this cold fact of life by our [deferential] standard for reviewing the rulings of judges presiding over jury selection. . . . The point is not that we review claims of ineffectiveness by a similar standard but rather that the standard by which we review decisions by trial judges accepts the reality that the selection process is more an art than a science, and more about people than about rules." *Romero* v. *Lynaugh*, supra, 884 F.2d 878–79.

[10] The petitioner relies on Attorney Kaatz' testimony at the habeas trial that "there were some very serious omissions" in Attorney St. John's voir dire examinations, particularly his failure to ask the prospective jurors whether they had been the victim of a crime. The habeas court observed in its memorandum of decision, however, that Attorney Kaatz' "critiques of Attorney St. John's trial performance reflect more disagreement over litigation style and personal preference than negligent representation." Although the habeas court made that observation in an unrelated section of its memorandum of decision, it is evident that the habeas court did not accord any weight to Attorney Kaatz' opinion that Attorney St. John's trial decisions were objectively unreasonable. We cannot reevaluate that determination in this appeal. "The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Internal quotation marks omitted.) *Saunders* v. *Commissioner of Correction*, 137 Conn. App. 493, 502, 48 A.3d 728, cert. denied, 307 Conn. 920, 54 A.3d 182 (2012).

[11] In *Warger*, the United States Supreme Court held that rule 606 (b) of the Federal Rules of Evidence, which precludes evidence from being offered "about any statement made or incident that occurred during the jury's deliberations," bars the admission of "juror testimony during a proceeding in which a party seeks to secure a new trial on the ground that a juror lied during voir dire [in order to conceal bias]." (Internal quotation marks omitted.) *Warger* v. *Shauers*, supra, 135 S. Ct. 525. The court reasoned that the plain text of the rule reflected the "federal approach" to impeachment of jury verdicts in that it "prohibit[s] the use of *any* evidence of juror deliberations, subject only to the express exceptions for extraneous information and outside influences." (Emphasis in original.) Id., 527. Extraneous

information, the court explained, consists of information "derive[d] from a source 'external' to the jury," such as "publicity and information related specifically to the case the jurors are meant to decide, while 'internal' matters include the general body of experiences that jurors are understood to bring with them to the jury room." Id., 529. The petitioner in *Warger* sought to admit an affidavit averring that a juror made statements during deliberations suggesting that she had lied during voir dire about her impartiality and ability to award damages for negligence in an automobile crash. Id., 524. The court concluded that the affidavit contained " 'internal' " information, and was therefore inadmissible, because it contained information that may have informed the juror's "general views about negligence liability for car crashes," but no information providing her or the rest of the jury with information about the specific car crash at issue in the case. Id., 529.

[12] The respondent urges us to apply the restrictive "federal approach" adopted by the court in *Warger* because rule 606 (b) of the Federal Rules of Evidence is "virtually identical" to Practice Book § 42-33 and "the principles set forth in *Warger* exist independently in our jurisprudence." We offer no opinion on these arguments.

[13] The petitioner claimed in his direct appeal that the instruction provided in Judge Cremins' final charge to the jury misstated the law on the proper use of constancy of accusation evidence. See *State* v. *Antwon W.*, supra, 118 Conn. App. 200–201. Because the claim was unpreserved and was not constitutional in nature, this court declined to review it under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). See *State* v. *Antwon W.*, supra, 201. This court also declined to grant relief under the plain error doctrine. Id., 202; see Practice Book § 60-5.

[14] The petitioner claimed in his direct appeal that Judge Cremins abused his discretion in admitting the constancy of accusation testimony. *State* v. *Antwon W.*, supra, 118 Conn. App. 192. In rejecting that claim, this court explained: "The constancy of accusation doctrine traces its roots to the common-law concept of 'hue and cry' whereby victims of violent crime were expected to cry out immediately and alert their neighbors that they had been violently assaulted. . . . In the context of sexual assault, evidence of a victim's 'hue and cry' was 'a necessary prerequisite for a court to hear a rape case' such that a woman who had not so complained could not have her case prosecuted. . . . Until 1974 in Connecticut, the state was required to offer evidence corroborating a victim's claims to obtain a conviction for sexual assault. See, e.g., General Statutes (Rev. to 1969) § 53a-68, which concerned certain sexual offenses and provided in relevant part: 'A person shall not be convicted of any offense under this part, or of an attempt to commit such offense, solely on the uncorroborated testimony of the alleged victim, except as hereinafter provided. Corroboration may be circumstantial . . . .' The General Assembly repealed this requirement of corroboration in Public Acts 1974, No. 74-131. Despite the repeal of the corroboration requirement, in cases such as the present one, the state often seeks to offer evidence corroborating the victim's complaint of sexual abuse.

"In *State* v. *Troupe*, supra, 237 Conn. 293–306, our Supreme Court reviewed the state of the constancy of accusation doctrine from the common law to the present, reaffirming its basic elements. The court acknowledged that the necessity of the doctrine is to counter the 'unwarranted, but nonetheless persistent, view that a sexual assault victim who does not report the crime cannot be trusted to testify truthfully about the incident.' Id., 303. The court detailed the rule, concluding that 'a person to whom a sexual assault victim has reported the assault may testify only with respect to the fact and timing of the victim's complaint; any testimony by the witness regarding the details surrounding the assault must be strictly limited to those necessary to associate the victim's complaint with the pending charge, including, for example, the time and place of the attack or the identity of the alleged perpetrator. . . . Thus, such evidence is admissible only to corroborate the victim's testimony and not for substantive purposes. Before the evidence may be admitted, therefore, the victim must first have testified concerning the facts of the sexual assault and the identity of the person or persons to whom the incident was reported.' Id., 304–305; see also Conn. Code Evid. § 6-11 (c).

"Turning now to the facts of the present case, we do not conclude that the court abused its discretion in allowing the constancy of accusation testimony to be admitted. The testimony of T, B and S was preceded by the victim's testimony covering the facts of the assaults and the persons to whom she had reported them. The constancy witnesses' testimony regarding the victim's out-of-court statements properly was limited to the fact that the victim had complained, the timing of each complaint and necessary details connecting the complaints to the assaults. Importantly, the testimony

contained no extraneous details of the assaults, and it pertained only to the approximate time and place the assaults had occurred and the defendant's identity as the perpetrator. Such testimony is squarely within the parameters set forth in *Troupe*." (Citations omitted; footnote omitted; internal quotation marks omitted.) *State* v. *Antwon W.*, supra, 118 Conn. App. 195–97.

[15] Judge Cremins included this or similar language in the limiting instructions he provided prior to the testimony of T, B, and S, and in his final charge to the jury. Although Judge Cremins omitted this language from the instruction provided after the testimony of S, this omission is inconsequential, given that the jury had been instructed three times previously that the constancy evidence could not be considered for substantive purposes and was subsequently instructed to that effect in the final charge.

[16] In *Daniel W. E.*, our Supreme Court suggested that, "to ensure clarity in future cases," the standard criminal jury instruction on constancy of accusation evidence, as well the corresponding § 6-11 (c) of the Connecticut Code of Evidence, should be modified to explain that such evidence "is admissible only for the purpose of negating any inference that, because there was a delay in reporting the offense, the offense did not occur, and, therefore, such evidence may be used only in considering whether the complaint was made, and not to corroborate the substance of the complaint." *State* v. *Daniel W. E.*, supra, 322 Conn. 616. The court concluded, however, that the jury instruction provided on constancy of accusation evidence did not misstate the law regarding the proper use of such evidence. See id., 612–13. The instructional language at issue in *Daniel W. E.* is largely similar to the language utilized in the present case. Unlike the present case, however, the instructions at issue in *Daniel W. E.* also contained language providing that constancy evidence is "only admitted for the limited purpose of corroborating what the complaining witness, [the victim], has testified to in court *with respect only to the fact and timing of her complaint, the time and place of the alleged sexual assaults, and the identity of the alleged perpetrator*." (Emphasis added; internal quotation marks omitted.) Id., 606.

[17] The testimony from T and S regarding the victim's demeanor and tone while disclosing the abuse is not considered constancy of accusation evidence and, therefore, is admissible regardless of the limitations of *Troupe*. See *State* v. *Burney*, 288 Conn. 548, 557–58, 954 A.2d 793 (2008).

[18] The victim's statements to Dr. Kasper were admitted not under the constancy of accusation doctrine but under the medical treatment exception to the hearsay rule. See *State* v. *Dollinger*, 20 Conn. App. 530, 534–35, 568 A.2d 1058, cert. denied, 215 Conn. 805, 574 A.2d 220 (1990).

[19] Contrary to the petitioner's assertion that the habeas court "erred in denying" this claim, the habeas court never addressed it in its memorandum of decision.

[20] In his brief, the petitioner refers to the records as "the information contained in petitioner's exhibit 24."

---