******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

RICHARD SANTOS *v.* COMMISSIONER OF
CORRECTION
(AC 38803)

Lavine, Sheldon and Harper, Js.

*Syllabus*

The petitioner, who had been convicted of various crimes in connection
with his alleged conduct in stabbing the victim with the assistance of
an accomplice, E, sought a writ of habeas corpus, claiming that the
prosecutor violated his constitutional right to due process by knowingly
presenting and failing to correct false testimony given by E, and that
his trial counsel provided ineffective assistance by failing to adequately
advise the petitioner about the risks of testifying on his own behalf.
During the petitioner's criminal trial, E, who was incarcerated at the
time for his role in the stabbing of the victim, testified that he had
observed the petitioner stab the victim with a knife, that the prosecutor
did not offer or promise him anything in exchange for his testimony,
that he was testifying of his own free will, and that his sentence would
not be reduced and that he did not expect to obtain a sentence modifica-
tion in exchange for his testimony against the petitioner. E admitted on
cross-examination, however, that he was testifying against the petitioner
because he anticipated that his sentence may be reduced in exchange
for his truthful testimony. The habeas court rendered judgment denying
the petition and, thereafter, denied the petition for certification to appeal,
and the petitioner appealed to this court. *Held*:
1. The habeas court did not abuse its discretion in denying the petition for
certification to appeal with respect to the petitioner's claim that the
prosecutor knowingly presented E's false or misleading testimony and
thereby violated his right to due process; even if the prosecutor, upon
reviewing E's psychiatric records, should have known that E's testimony
regarding his expectation of receiving a reduction of his sentence was
misleading, any error was harmless beyond a reasonable doubt, because,
even if the jury disregarded E's testimony, there was sufficient other
evidence presented by the state, including testimony from the petitioner,
the victim, and several other witnesses, and letters that the petitioner
wrote from prison, to support the petitioner's conviction.
2. The habeas court did not abuse its discretion in denying the petition for
certification to appeal as to the petitioner's claim that his trial counsel
was deficient because she failed to adequately advise the petitioner
about the risks of testifying on his own behalf; that court was not clearly
erroneous in finding that trial counsel's performance in advising the
petitioner about testifying on his own behalf was not deficient, as the
habeas court credited the testimony of trial counsel and her cocounsel
that they had advised the petitioner about the downsides and advantages
of testifying, it discredited the petitioner's testimony that his attorneys
spent a short and inadequate amount of time preparing him to testify,
and it specifically found that it was the petitioner's decision to testify
and that any prejudice he may have suffered was due solely to his
own distrust of his trial counsel, and the court's factual findings were
supported by the record.

Argued May 23—officially released October 3, 2017

*Procedural History*

Amended petition for a writ of habeas corpus,
brought to the Superior Court in the judicial district of
Tolland, where the amended petition was withdrawn
in part and the matter was tried to the court, *Fuger,
J.*; judgment denying the petition; thereafter, the court
denied the petition for certification to appeal, and the
petitioner appealed to this court. *Appeal dismissed.*

*Vishal K. Garg,* for the appellant (petitioner).

*Timothy F. Costello*, assistant state's attorney, with whom, on the brief, were *Patrick J. Griffin*, state's attorney, and *Rebecca A. Barry*, assistant state's attorney, for the appellee (respondent).

*Opinion*

LAVINE, J. The petitioner, Richard Santos, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. The petitioner claims that the habeas court abused its discretion in denying his petition for certification to appeal because it improperly concluded that (1) the prosecutor in his criminal trial did not knowingly present false or misleading testimony against him,[1] and (2) his trial defense counsel did not render ineffective assistance of counsel.[2] We dismiss the appeal.

The following facts, as found by the habeas court, and procedural history are relevant to our resolution of the petitioner's appeal. "In the early morning hours of February 3, 2007, a stabbing occurred at 79 Foster Street, a red brick crack house in Meriden [house]. The house was being rented to E.P.,[3] the so-called landlord of the premises, who had resided there for seven years. The [petitioner] had been staying in a room on the second floor for about six weeks. . . .

"Kewon Potts [victim] had been hanging out at [the house] on the afternoon of February 2, 2007, and had had an argument with the [petitioner] over what the [petitioner] perceived to be a low offer by [the victim] to buy a large crack rock. The [petitioner] apparently also had taken issue with [the victim's] poor treatment of [the victim's] girlfriend, who spent time at [the house]. . . .

"At about 1 a.m., [on February 3, 2007, the victim] was walking home from a friend's house on the corner of Foster and Lincoln Streets when he passed [the house]. E.P. and the [petitioner], who were on the porch, called out to [the victim] to come inside. [The victim] was led into the house; E.P. immediately barricaded the door. The [petitioner] pulled a folding knife that he frequently carried and began attacking [the victim], ultimately stabbing him in the head, left arm and chest. The struggle moved from the living room into the kitchen. Once there, E.P. blocked the back door, wielding a large rock as a weapon. The two men then attempted to force [the victim] into the basement. . . .

"The other persons present at [the house] became aware of the violent altercation and panicked; many fled the scene. . . .

"The [petitioner] and E.P. left quickly thereafter. E.P. went to his mother's home in New Haven. The [petitioner] went to Alberta Borelli's house, where his [friend], Mala Meekins, was staying. While there, the [petitioner] made several telephone calls in which he stated that he had stabbed someone. . . . The [petitioner] later traveled to Michigan, where he discarded the knife.

"The [petitioner] was arrested and charged, by way of substitute information, with three counts: assault in the first degree [in violation of General Statutes § 53a-59 (a) (1)], unlawful restraint in the first degree [in violation of General Statutes § 53a-95], and possession of a dangerous instrument [in violation of General Statutes § 53-206]. . . .

"A few weeks prior to trial, Donald Light, a private investigator hired by the [petitioner], interviewed E.P. Light noted that E.P. was held at Garner Correctional Institution (Garner), which he believed housed individuals with mental health issues. Light observed that E.P. moved slowly, his speech was slow and labored, and he seemed catatonic. On the basis of Light's interview with E.P., the [petitioner] filed a motion for an in camera review of E.P.'s psychiatric records. The [trial] court granted the motion and reviewed the records." (Citation omitted; footnote added; internal quotation marks omitted.)

"[On December 3, 2008, the state began its case-in-chief against the petitioner]. During trial, E.P. was called to testify by the state. He testified that, [on April 18, 2008], he had pleaded guilty to assault in the first degree as an accessory for his role in the stabbing of the victim and was incarcerated at Garner. . . .

"E.P. further testified that on the day of the incident, he had seen the [petitioner] with what looked like a miniature hunting knife that folded up. He stated that he had seen the [petitioner] with the knife on previous occasions and that when the [petitioner] got high, he would walk around with it in his hand. E.P. stated that when the victim arrived back at the house, he opened the door for the victim and they walked toward the kitchen. There, a fight broke out between the [petitioner] and the victim, and E.P. testified that he saw the [petitioner] grab the victim and start stabbing him on the arms and in the chest with the same knife that he had seen the [petitioner] with earlier." (Internal quotation marks omitted.)

On December 10, 2008, the petitioner was found guilty by a jury of assault in the first degree, unlawful restraint in the first degree, and carrying a dangerous weapon. The trial court, *Holden, J.*, sentenced the petitioner to a total effective sentence of fifteen years of incarceration, which was to be suspended after twelve years, followed by three years of probation. This court subsequently affirmed his convictions on direct appeal in *State* v. *Santos*, 146 Conn. App. 537, 539, 78 A.3d 230 (2013) (*Santos I*).[4] Our Supreme Court granted certification[5] and affirmed his convictions in *State* v. *Santos*, 318 Conn. 412, 121 A.3d 697 (2015) (*Santos II*).

On February 4, 2015, the petitioner filed an amended petition for a writ of habeas corpus. The amended petition contained five claims, two of which are relevant

to, and are preserved for, this appeal: (1) the prosecutor[6] in the petitioner's criminal trial violated his federal constitutional right to due process because she knowingly presented and failed to correct the false testimony of E.P., and (2) Auden Grogins, the petitioner's trial counsel, violated his federal and state rights to effective assistance of counsel by failing to adequately advise the petitioner about the risks of testifying on his own behalf.

On June 16, June 17, and August 12, 2015, the habeas court, *Fuger*, *J.*, conducted a habeas trial, in which the petitioner called a number of witnesses to testify.[7] On November 19, 2015, in a memorandum of decision, the habeas court denied the petitioner's amended petition. On November 27, 2015, the petitioner filed a petition for certification to appeal, which the habeas court denied on December 8, 2015. This appeal followed. Additional facts will be set forth as necessary.

We first set forth the standard of review for the petitioner's claim that the habeas court abused its discretion in denying his petition for certification to appeal. "First, [the petitioner] must demonstrate that the denial of his petition for certification constituted an abuse of discretion. . . . Second, if the petitioner can show an abuse of discretion, he must then prove that the decision of the habeas court should be reversed on the merits. . . . To prove that the denial of his petition for certification to appeal constituted an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . . In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine . . . whether those claims satisfy one or more of the three criteria . . . ." (Internal quotation marks omitted.) *Duncan* v. *Commissioner of Correction*, 171 Conn. App. 635, 644–45, 157 A.3d 1169, cert. denied, 325 Conn. 923, 159 A.3d 1172 (2017).

"The conclusions reached by the [habeas] court in its decision to dismiss [a] habeas petition are matters of law, subject to plenary review. . . . [When] the legal conclusions of the [habeas] court are challenged, [the reviewing court] must determine whether they are legally and logically correct . . . and whether they find support in the facts that appear in the record. . . . To the extent that factual findings are challenged, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous. . . . [A] finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and

firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Grant* v. *Commissioner of Correction*, 121 Conn. App. 295, 298–99, 995 A.2d 641, cert. denied, 297 Conn. 920, 996 A.2d 1192 (2010).

With these principles in mind, we now address the petitioner's substantive claims to determine whether they satisfy one or more of the three criteria.

I

The petitioner first claims that the habeas court improperly concluded that the prosecutor did not knowingly present the false or misleading testimony of E.P., and that, regardless, the state presented sufficient evidence to convict the petitioner without E.P.'s testimony.[8] We do not need to decide whether the prosecutor knowingly presented misleading testimony because we disagree with the petitioner that he suffered prejudice from any violation.

The following additional facts are necessary in resolving the petitioner's claim. On April 18, 2008, due to his participation in the assault of the victim on February 3, 2007, E.P. pleaded guilty before the trial court, *Damiani, J.*, under the *Alford* doctrine[9] to aiding and abetting assault in the first degree in violation of General Statutes §§ 53a-59 (a) (1) and 53a-8.[10] In exchange for pleading guilty, the prosecutor offered to recommend that E.P. serve a sentence of fourteen years of incarceration, execution suspended after six and one-half years, followed by three years of probation. The trial court accepted E.P.'s guilty plea and scheduled his sentencing to take place on June 13, 2008.

On June 13, 2008, before Judge Damiani sentenced E.P., he explained to E.P. that if he testified against the petitioner in the petitioner's upcoming criminal trial, "the state will be agreeable to have a hearing on a motion to modify your sentence." The prosecutor interjected to clarify on the record that she "did not take into consideration anything that [E.P.] may do in the future" when offering E.P. his plea deal. The trial court sentenced E.P. in accordance with the plea agreement.

On December 4, 2008, during the petitioner's criminal trial before Judge Holden, the prosecutor called E.P. to testify. He testified that the prosecutor did not offer or promise him anything in exchange for his testimony and that he was testifying of his "own free will." On cross-examination, Grogins, the petitioner's trial counsel, attempted to impeach E.P. by questioning him about the terms of his plea agreement, but he denied that his sentence was reduced or that he expected to obtain a sentence modification in exchange for his testimony against the petitioner. After questioning E.P. about Judge Damiani's comments made during E.P.'s June 13, 2008 sentencing hearing,[11] however, E.P. admitted that he anticipated that his sentence may be reduced in

exchange for his truthful testimony, and "that's why [he was] here today."

Sometime after the petitioner was convicted, E.P. filed a motion to modify his sentence. On April 21, 2009, Judge Damiani held a sentencing modification hearing to decide E.P.'s motion, and the prosecutor stated that she agreed to the hearing. The trial court granted E.P.'s motion and modified his sentence to be suspended after five years, as opposed to six and one-half years.

In the petitioner's amended petition, he alleged that E.P. testified falsely for the state when he testified that "he was not offered or promised any consideration by the prosecuting authority" and "he did not expect to receive any consideration from the prosecuting authority in exchange for his testimony," and that the prosecutor knew or should have known that E.P.'s testimony was false.

During the petitioner's habeas trial, the prosecutor testified that she did not recall offering a favorable disposition to E.P. in exchange for his testimony and that there was nothing in her files that indicated that an offer was made to E.P. She further testified that she remembered that before and during the petitioner's criminal trial, there had been some discussions pertaining to E.P.'s psychiatric records and that she had assumed that she had reviewed them before she disclosed them to Grogins. When the petitioner showed her E.P.'s records, however, she did not recognize them. On the last day of the habeas trial, the petitioner introduced into evidence a portion of E.P.'s psychiatric records from the Correctional Managed Health Care division of the University of Connecticut Health Center, dated July 31, 2008, which were in the petitioner's appellate records from his direct appeal to our Supreme Court. The records contained a quote by E.P., indicating that he stated during a session: "If I testify against my codefendant, they'll take [two] years off my sentence."

In denying the petitioner's amended petition, the habeas court rejected his claim that the prosecutor knowingly presented false testimony. In its memorandum of decision, the habeas court stated that "[t]he evidence that the petitioner stabbed the victim is clear and convincing; numerous witnesses, other than E.P., testified to that fact. The evidence supporting his conviction is more than sufficient, even if E.P.'s testimony is disregarded in its entirety. Moreover, there is really no reason to discredit E.P.'s testimony. The petitioner wishes to have this court believe that E.P. committed perjury when he said that there was no agreement with the state for leniency in exchange for his testimony against the petitioner. Unfortunately for the petitioner's argument, the evidence presented at the habeas trial is clear that there was no *explicit* agreement with the state that E.P. would receive favorable consideration in exchange for his testimony. It is true that E.P. *antici-*

*pated being rewarded* for his testimony, but this anticipation of a reward is not the same as an agreement for a reduced sentence. Had the state objected to the sentence modification filed by E.P. after his testimony, the facts of this case are such that he would not have had an enforceable agreement with the state." (Emphasis in original.)

On appeal, the petitioner argues that the habeas court mischaracterized the petitioner's claim, asserting that he did not claim "that E.P. had an agreement with the state" but, rather, his "claim was that E.P's testimony about what he *expected* was false." (Emphasis in original.) He argues that "E.P.'s testimony misled the jury into believing that E.P. did not have a specific expectation about how his sentence would change," but "E.P. actually expected that two years would be taken off of his sentence in exchange for testifying against the petitioner." He contends that this information is evident in E.P.'s psychiatric records, and because the prosecutor reviewed his records before he testified, she knew or should have known that E.P. had a specific expectation that his sentence would be reduced by two years in exchange for his testimony against the petitioner. He contends that her failure to correct E.P.'s testimony was improper, and there was a reasonable likelihood that "the petitioner would not have been convicted but for the false testimony of E.P."

"[T]he knowing presentation of false evidence by the state is incompatible with the rudimentary demands of justice. . . . Furthermore, due process is similarly offended if the state, although not soliciting false evidence, allows it to go uncorrected when it appears. . . . [*Giglio* v. *United States*, 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972)] and [*Napue* v. *Illinois*, 360 U.S. 264, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959)] require that the prosecutor apprise the court when he knows that his witness is giving testimony that is substantially misleading. . . . A new trial is required if the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury." (Internal quotation marks omitted.) *State* v. *Goodson*, 84 Conn. App. 786, 803, 856 A.2d 1012, cert. denied, 271 Conn. 941, 861 A.2d 515 (2004). "This standard . . . is not substantively different from the test that permits the state to avoid having a conviction set aside, notwithstanding a violation of constitutional magnitude, upon a showing that the violation was harmless beyond a reasonable doubt." *Adams* v. *Commissioner of Correction*, 309 Conn. 359, 371–72, 71 A.3d 512 (2013).

We conclude that even if the prosecutor should have known that E.P.'s testimony regarding his expectation of receiving a two year reduction of his sentence was misleading because of the quote within his psychiatric records, any error was harmless beyond a reasonable doubt. We agree with the habeas court and our Supreme

Court that even if the jury disregarded E.P.'s testimony, there was sufficient evidence presented by the state to support the petitioner's conviction.

"First, there were several witnesses whose testimony corroborated that of E.P. and on which the jury could have relied in convicting the [petitioner, including the victim, Frederick Elbert, Jolie Shelton, and Meekins]. . . .

"The [petitioner's] own testimony and letters he wrote from prison provided further support for the jury's verdict. The [petitioner] testified that he and the victim had had an argument during the day of February 2, 2007, leading the victim to get upset and leave the house. When the victim returned later that night, they started arguing again and a fight broke out. The [petitioner] admitted that he had been smoking crack cocaine and drinking alcohol for a few days prior to the stabbing, including throughout the day of February 2 and into February 3, 2007. . . .

"During the course of the fight, the [petitioner] noticed that the victim was bleeding. The [petitioner] testified that he did not remember stabbing the victim, but because he was high, he could not remember the details of the fight. He did, however, remember engaging in a fistfight with the victim, trying to avoid getting hit and trying to 'get [his] blows off.' The [petitioner] testified that his intention was to beat up the victim by punching him more times than he was punched. On cross-examination, the [petitioner] stated that when he is in a fight, he is defending his life, he is trying to win, and he will not stop until he thinks he has defeated his opponent. The [petitioner] testified that he always carried a knife for protection because he had previously been attacked. He could not remember, however, whether he had his knife with him during the fight with the victim, but admitted that he usually carried it.

"In addition to his testimony, the [petitioner] admitted writing some letters to friends about the events surrounding the stabbing, which provided additional support for the jury's verdict." *Santos II*, supra, 318 Conn. 426–28.

Because the state presented sufficient evidence to convict the petitioner beyond a reasonable doubt without E.P.'s testimony, we conclude that the habeas court did not abuse its discretion in denying his petition for certification to appeal as to this claim.

II

The petitioner's second claim is that the habeas court improperly concluded that Grogins did not render ineffective assistance of counsel because she failed to adequately advise the petitioner about the risks of testifying on his own behalf.[12] We disagree.

The following additional facts are relevant in resolv-

ing the petitioner's claim. During the habeas trial, the petitioner called Dean Popkin, Grogins' cocounsel for the petitioner's criminal trial. He testified that Grogins requested that he become involved in the case because the petitioner "was a very difficult individual to get along with." He testified that his general practice with respect to advising his clients on whether they should testify on their own behalf is that he "go[es] over the pros and cons" of testifying and explains "what possible areas would be covered . . . in cross-examination." He testified that he "remember[ed] believing [that the state had] a strong case against [the petitioner] . . . so it is very possible that [he] believe[d] [that the petitioner] had to get up there to give his side of the story." Although he could not recall the specific details of the conversations that took place between him and the petitioner, Popkin was sure that he followed his general practice when advising the petitioner on whether he should testify.

The petitioner testified that he and his attorneys had only "[s]light conversations" about whether he should testify on his own behalf. He testified that Grogins told him that he would be cross-examined by the prosecutor "but she didn't explain in detail how tough it was going to be." The petitioner admitted, however, that he did not tell Grogins his side of the story because he "didn't trust her," and that she told him to "be short [and] precise" when testifying on cross-examination. Importantly, the petitioner acknowledged that it was his decision to testify.

Finally, Grogins testified about her general practice in regard to advising clients on their right to testify. She explained that she tells every client that he or she has a right to testify, but she always explains "the downsides" of testifying, such as "impeachment, cross-examination, [and] criminal records." Grogins testified that she usually first asks her client "direct question[s] that . . . would help the theory of defense. Then [she] does] a mock cross-examination, and tell[s] him [or her] what to expect with regard to impeachment, depending on what he [or she] said." Grogins could not recall what she specifically told the petitioner in preparing him to testify, but she did remember that he wanted to testify "to get his story out there." She testified that "he didn't follow [her] advice" on cross-examination "because he said too much and got into things that [she] wouldn't have gotten into . . . ."

The habeas court denied the petitioner's claim that Grogins rendered ineffective assistance of counsel. In its memorandum of decision, it explained that "[i]t is clear from the testimony of the petitioner and the comments of both his attorneys that he was a difficult client. By his own admission, he did not trust . . . Grogins, so he did not tell his side of the story to her. . . . The testimony of his attorneys is clear that he was properly

advised as to his right to testify, the downsides of doing so and the potential advantages. The petitioner is clearly the one who made the decision to take the stand on his own behalf. Given all of these factors, the task of preparing him for his testimony was made more difficult by the petitioner's own distrust and not some deficiency of performance on the part of . . . Grogins."

On appeal, the petitioner argues that Grogins failed to properly advise the petitioner about the risks of testifying because she "advised [him] that the jury would want to hear the petitioner's side of the story," even though "the most damaging testimony was elicited during the petitioner's direct examination by his own counsel." (Internal quotation marks omitted.) He also contends that Grogins failed to adequately prepare him for cross-examination. He argues that there was a reasonable probability that but for Grogins' failure to properly advise him about the risks of testifying, the outcome of the trial would have been different.

"To succeed on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-pronged test articulated in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). . . . [H]e must show . . . (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. . . . Because both prongs . . . must be established for a habeas petitioner to prevail, a court may dismiss a petitioner's claim if he fails to meet either prong." (Citation omitted; internal quotation marks omitted.) *Mukhtaar* v. *Commissioner of Correction*, 158 Conn. App. 431, 437, 119 A.3d 607 (2015). The habeas court in the present case addressed only the first *Strickland* prong and found that Grogins' performance was not deficient. "To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." (Internal quotation marks omitted.) Id., 437–38.

"[Our appellate courts do] not retry the case or evaluate the credibility of the witnesses. . . . Rather, [an appellate court] must defer to the [trier of facts'] assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. . . . The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Internal quotation marks omitted.) *Taylor* v. *Commissioner of Correction*, 284 Conn. 433, 448, 936 A.2d 611 (2007).

We conclude that the habeas court was not clearly erroneous in finding that Grogins' performance in advising the petitioner about testifying was not deficient

because all of the habeas court's factual findings are supported by the record. It credited Popkin's and Grogins' testimonies that they advised the petitioner about the downsides and advantages of testifying, and it discredited the petitioner's testimony that his attorneys spent little time preparing him to testify. Notably, it specifically found that it was the petitioner's decision to testify and that any prejudice he may have suffered was due solely to his own distrust of Grogins.

Because the petitioner failed to show that Grogins' performance was deficient, we conclude that the habeas court did not abuse its discretion in denying his petition for certification to appeal as to this claim.

The appeal is dismissed.

In this opinion the other judges concurred.

[1] The petitioner's first claim is constitutional in nature. See *State* v. *Jordan*, 314 Conn. 354, 370–71, 102 A.3d 1 (2014). "Habeas, as a collateral form of relief, is generally available to litigate constitutional issues only if a more direct route to justice has been foreclosed through no fault of the petitioner." (Internal quotation marks omitted.) *Salters* v. *Commissioner of Correction*, 141 Conn. App. 81, 87, 60 A.3d 1004, cert. denied, 308 Conn. 932, 64 A.3d 330 (2013). The petitioner asserted in his amended petition that he "did not raise this claim in any prior proceedings," and, therefore, admitted that he did not properly file this claim through a direct appeal. The respondent, however, failed to assert the affirmative defense of procedural default, and it is "[o]nly after the respondent raises the defense of procedural default in accordance with [Practice Book] § 23-30 (b) does the burden shift to the petitioner to allege and prove that the default is excused." *Crawford* v. *Commissioner of Correction*, 294 Conn. 165, 176, 982 A.2d 620 (2009). We will, therefore, review the merits of the petitioner's constitutional claim.

[2] The petitioner also claims on appeal that the habeas court improperly concluded that the trial court, *Damiani, J.*, did not improperly order the destruction of evidence relevant to his criminal case, namely the two knives police found in E.P.'s kitchen while they were investigating E.P.'s case, before he had the opportunity to examine and test the evidence. Specifically, he argues that the trial "court's failure to adopt adequate procedures to avoid the destruction of evidence where there are multiple codefendants violated the petitioner's right to due process." He contends that the habeas court "applied the wrong legal standard" in addressing his claim because it did not review his claim under "the [*Mathews* v. *Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)] balancing test." The respondent argues that the petitioner's claim is not reviewable because he is arguing a different claim on appeal than the one he alleged in his amended petition. Specifically, he argues that because the habeas court did not rule on the merits of the claim the petitioner now argues on appeal, and because the petitioner failed to file a motion for articulation, his claim is unreviewable. After a careful review of the record, we agree with the respondent.

"This court is not bound to consider claimed errors unless it appears on the record that the question was distinctly raised . . . and was ruled upon and decided by the court adversely to the [petitioner's] claim. . . . This court is not compelled to consider issues neither alleged in the habeas petition nor considered at the habeas proceeding . . . ." (Internal quotation marks omitted.) *Greene* v. *Commissioner of Correction*, 131 Conn. App. 820, 822, 29 A.3d 171 (2011), cert. denied, 303 Conn. 936, 36 A.3d 695 (2012); see also *Newsome* v. *Commissioner of Correction*, 109 Conn. App. 159, 165 n.4, 951 A.2d 582, cert. denied, 289 Conn. 918, 957 A.2d 878 (2008) (declining to review petitioner's arguments because habeas court did not address arguments in memorandum of decision, and petitioner failed to file motion for articulation).

It is evident that the habeas court construed the petitioner's claim as an allegation that his right to due process was violated "by the [trial] court's destruction of evidence in its custody" rather than by "the [trial] court's failure to adopt adequate procedures to avoid the destruction of evidence." In rendering its decision, it found that the evidence presented at the habeas trial showed that the destroyed knives were not material to the petitioner's

case. It also relied on this court's holding in *State* v. *Santos*, 146 Conn. App. 537, 549–52, 78 A.3d 230 (2013), aff'd, 318 Conn. 412, 121 A.3d 697 (2015), in which we held that the petitioner was not entitled to a dismissal of the charges against him or an adverse inference instruction on the basis of the destruction of the knives because he failed to show that the unavailability of the knives deprived him of due process of law. Because the petitioner is essentially arguing a new claim on appeal, we will not review the merits of his claim. See *Davis* v. *Commissioner of Correction*, 160 Conn. App. 444, 456, 124 A.3d 992 ("to the extent that the habeas court construed the petitioner's allegations in a way that the petitioner deems inaccurate or incomplete, the failure of the petitioner to clarify for the habeas court his allegations is fatal to his claim"), cert. denied, 319 Conn. 957, 125 A.3d 1012 (2015).

We also reject the petitioner's argument that this claim was preserved because he argued it in his posttrial brief to the habeas court before it rendered its decision. "Claims raised for the first time in posttrial briefs are not reviewable by the habeas court or by this court on appeal." (Internal quotation marks omitted.) *Antwon W.* v. *Commissioner of Correction*, 172 Conn. App. 843, 877, 163 A.3d 1223, cert. denied, 326 Conn. 909, 164 A.3d 680 (2017).

To the extent that the habeas court ruled on the claim presented in his amended petition, we conclude that it did not abuse its discretion in denying the petitioner's certification to appeal because we agree with the habeas court that he failed to show that the knives were material to his case and would have supported a third-party culpability defense.

[3] We refer to this individual by his initials because we discuss his privileged psychiatric records.

[4] The petitioner claimed in his direct appeal that "(1) his right to confront an adverse witness was compromised by the trial court's limitations on the disclosure and use of [E.P.'s] psychiatric records, and (2) the [trial] court erred by denying his motion to dismiss or, in the alternative, his request for an adverse inference instruction, because purportedly material evidence was unavailable." *Santos I*, supra, 146 Conn. App. 539.

[5] Our Supreme Court granted the petitioner's petition for certification to appeal limited to the following issue: "Did the Appellate Court properly conclude that the [petitioner's right] under the confrontation clause [was] not violated by virtue of the trial court's refusal to require disclosure of certain psychiatric records of the eyewitness E.P.?" (Internal quotation marks omitted.) *Santos II*, supra, 318 Conn. 415.

[6] Stacey Miranda, formerly Stacey Haupt, prosecuted the petitioner's criminal trial. She also handled E.P.'s guilty pleas, sentencing, and sentence modification. Throughout this opinion, we will refer to Miranda as "the prosecutor."

[7] The day the habeas trial began, the petitioner indicated that he was withdrawing count three, certain claims in count four, and count five of his amended petition.

[8] The petitioner argues on appeal that the prosecutor violated both his state and his federal constitutional rights. Although it does not change our analysis, we note that he failed to allege a state constitutional violation claim in his amended petition.

[9] See *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[10] E.P. also pleaded guilty under the *Alford* doctrine to conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 and 53a-134 (a) (3) due to his participation in a robbery that took place on February 1, 2007. The circumstances of the February 1, 2007 robbery are not relevant to the present appeal.

[11] In reference to the transcript of E.P.'s June 13, 2008 sentencing hearing, Grogins asked E.P.: "So, do you deny that you were told by both the judge and the prosecutor that you could have—you agree to have a sentence modification hearing after you testified here in court today?" The prosecutor objected on the ground that "it's the [trial] court that was speaking, not the prosecutor." Outside the presence of the jury, after reviewing the transcript, Grogins conceded that it was only Judge Damiani, and not the prosecutor, who told E.P. that he may receive a sentence modification if he testified against the petitioner.

[12] The petitioner also alleged in his amended petition, and now claims on appeal, that Grogins was ineffective in her representation of the petitioner because she failed to adequately cross-examine, impeach, or otherwise challenge the testimony of E.P. In denying his ineffective assistance of counsel

claim, the habeas court did not address this claim and stated in its memorandum of decision: "There are several areas of alleged deficient performance identified by the petitioner, however, the only one that merits discussion is the one that alleges that . . . Grogins failed to adequately prepare the petitioner for his testimony." It did not make any factual findings as to whether Grogins' cross-examination of E.P. amounted to ineffective assistance of counsel or whether any alleged deficiencies in her cross-examination of E.P. prejudiced the petitioner. In his petition for certification to appeal, the petitioner did not raise the claim that the habeas court improperly failed to address this ineffective assistance of counsel claim. Instead, he asserted that the habeas court "erred by finding that the petitioner's right to the effective assistance of counsel . . . was not violated," "erred by failing to find that the . . . performance [of the petitioner's trial counsel] was not deficient," and "erred by failing to find that the petitioner was prejudiced by his trial counsel's deficient performance." "This court has declined to review issues in a petitioner's habeas appeal in situations where the habeas court denied certification to appeal, and the issues on appeal had not been raised in the petition for certification." *Kowalyshyn* v. *Commissioner of Correction*, 155 Conn. App. 384, 389, 109 A.3d 963, cert. denied, 316 Conn. 909, 111 A.3d 883 (2015). Because the petitioner failed to raise this claim in his petition for certification to appeal, we decline to review it, as "[u]nder such circumstances, the petition for certification to appeal could not have apprised the habeas court that the petitioner was seeking certification to appeal based on such issues . . . [and] [a] review of such claims would amount to an ambuscade of the [habeas] judge." (Internal quotation marks omitted.) Id., 390.